IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 6, 2008 Session

## MELISSA MICHELLE COX v. M. A. PRIMARY AND URGENT CARE CLINIC, ET AL.

Appeal from the Circuit Court for Rutherford County
No. 51941    Royce Taylor, Judge

No. M2007-01840-COA-R3-CV - Filed January 30, 2009

Plaintiff in medical malpractice action appeals the trial court's grant of summary judgment in favor of defendant doctor and clinic. The trial court found that the deposition testimony of Plaintiff's expert witness failed to establish genuine issues of material fact with respect to the requirements of Tenn. Code Ann. § 29-26-115(a). Finding error, we reverse and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

William Kennerly Burger, Murfreesboro, Tennessee, for the appellant, Melissa Michelle Cox.

John R. Rucker, Jr., Murfreesboro, Tennessee, for the appellee, M.A. Primary and Urgent Care Clinic and Austin Adams.

**OPINION**

Melissa Cox ("Ms. Cox") brought suit against Dr. Austin Adams ("Dr. Adams") and M.A. Primary and Urgent Care Clinic (the "Clinic") for medical malpractice pursuant to the provisions of Tenn. Code Ann. § 29-26-115. Ms. Cox alleged that Dr. Adams was the Medical Director of the Clinic; that it was staffed by Michael Maddox, physician's assistant; and that Dr. Adams and the Clinic failed to promptly and completely evaluate and treat her symptoms over a two month period. As a consequence, she asserted, her cardiomyopathy went undiagnosed, causing her unwarranted pain and suffering, the worsening of her condition and resulting surgery.

Ms. Cox contended that she had maintained a physician/patient relationship with the Clinic since September 2003 and that, beginning in April 2004, she sought consultation and treatment for progressive respiratory problems. She had several appointments over the months of April, May and

June; all of her appointments were handled by Mr. Maddox. On June 19, while on vacation in Florida, she sought medical attention for acute shortness of breath at a hospital emergency room. Upon returning to Tennessee, she was treated at Stonecrest Medical Center in Smyrna, where she was diagnosed with a severe form of congestive heart failure, as a result of which she had a mitral valve replacement on July 15, 2004.

Dr. Adams and the Clinic filed a motion for summary judgment, supported by the affidavits of Mr. Maddox and Dr. Adams and a statement of undisputed facts. The affidavits stated that neither Dr. Adams nor the Clinic violated the standard of care and that Ms. Cox did not suffer any injury as a result of any action or omission on their part. The motion also contended that the complaint did not allege what act or omission of either the Clinic or Dr. Adams failed to meet the standard of care or the date on which the acts or omissions occurred.

Ms. Cox' response to the motion relied upon excerpts from her deposition, the deposition of her expert, Dr. Nelson Mangione, and her response to the statement of undisputed facts. In the brief, in support of her response to the motion, Ms. Cox stated the following with respect to her claim and the state of the record for purposes of the court's consideration of the summary judgment motion:

> . . . [T]he Affidavits [filed by Defendants in support of the motion] do not specifically address the requirements of the above-described statute [Tenn. Code Ann. § 63-19-106], including the written protocol of the diagnosis in question. Specifically, the Affidavits do not refute Ms. Cox's contention that Dr. Adams was entirely absent from her progressively debilitating care during the three months which preceded her acute episode at StoneCrest Medical Center in late-June, 2004. Ms. Cox describes in detail her inability to communicate with Dr. Adams; his general and evasive responses to her complaints in a single telephone call; and the certain conclusion that her entire evaluation and treatment, from April of 2004 through June of 2004, was single-handedly conducted by Physician's Assistant Michael Maddox, rather than Dr. Adams. The standard of care in that regard is statutorily defined, and is not refuted in the Affidavits submitted in support of the Motion for Summary Judgment. Aside from the statutorily described standard described, Dr. Mangione (as a board-certified internal medicine doctor and cardiologist) possesses expertise and experience which renders him competent to provide testimony regarding the default in the standard of care by Dr. Adams and his Physician's Assistant.

The motion was granted by the trial court. In granting summary judgment, the court found that Dr. Mangione was not able to testify as to the standard of care applicable to physician's assistants and, consequently, could not establish that Dr. Adams and/or the Clinic failed to act in accordance with the standard. The court also found that there was no proof in the record that any deviation from the applicable standard of care was proximately caused by Dr. Adams' actions or omissions. Finally, the court found that the deposition of Dr. Mangione did not meet the standard established in Tenn. Code Ann. § 29-26-115(a).

Ms. Cox filed a motion to reconsider, citing testimony of Dr. Mangione which had been overlooked, not cited or taken out of context by the trial court in ruling on the motion. The court overruled the motion to alter or amend, stating in part: "The court stated that the issues which the plaintiff believed the court should consider were matters that should be addressed by an appellate court." This appeal ensued.

Ms. Cox articulates the issue for resolution as follows:

Based upon the wording contained in T.C.A. § 63-19-106, is there a standard of care applicable to physician's assistants, in medical malpractice claims, which differs from the standard of care applicable to the supervising licensed medical doctor?

Dr. Adams and the Clinic articulate the issues thusly:

1. Did plaintiff, Melissa Michelle Cox, satisfy the requirements of Tenn. Code Ann. § 29-26-115(a) in order to maintain a medical malpractice lawsuit against the defendants?

2. May the plaintiff assert a theory of negligence, i.e., negligent supervision, which theory was not alleged in the original complaint.?

## I. Standard of Review

The issues were resolved in the trial court on summary judgment. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruis*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). If there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd v. Hall*, 847 S.W.2d at 210; *EVCO Corp. v. Ross*, 528 S.W.2d 20, 25 (Tenn. 1975). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008).

## II. Discussion

### A.  The Applicable Standard of Care

A threshold contention of Dr. Adams and the Clinic is that Ms. Cox has failed to meet the requirements of Tenn. Code Ann. § 29-26-115(a)[1] which requires that each of the three basic elements of a malpractice action - the standard of care, breach of the standard, and proximate cause - be proven by expert testimony.  *See Payne by Payne v. Caldwell,* 796 S.W.2d. 142, 143 (Tenn. 1990).  Dr. Adams and the Clinic assert that Dr. Mangione's admission that he did not know the standard of care applicable to a physician assistant means that he cannot testify to a violation of the standard of care and, thus, Ms. Cox cannot establish a genuine issue of material fact as to whether the Clinic failed to meet the standard of acceptable professional practice for a physician assistant. In response, Ms. Cox contends that Tenn. Code Ann. § 63-19-106 "sets forth a vicarious standard based upon the supervision rendered by the primary care physician."  In essence, she contends that the physician assistant, by virtue of § 63-19-106, is held to the same standard of care as the supervising physician.

The Tennessee Physician Assistants Act is codified at Tenn. Code Ann. § 63-19-101, *et. seq.* Tenn. Code Ann. § 63-19-102 defines "physician assistant" to be "an individual who renders services, whether diagnostic or therapeutic, that are acts constituting the practice of medicine . . . and, but for the provisions of § 63-6-204[2] and § 63-9-113,[3] could only be performed by a licensed physician."  A physician assistant is required to be licensed.  *See* Tenn. Code Ann. § 63-19-105. Pursuant to Tenn. Code Ann. § 63-19-106, a physician assistant may perform selected medical

---

[1]  Tenn. Code Ann. § 29-26-115(a) provides as follows:

> In a malpractice action, the claimant shall have the burden of proving by evidence as provided in subsection (b):
> (1) the recognized standard of acceptable professional practice in the profession and the specialty thereto, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary care and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would otherwise not have occurred.

[2]  Tenn. Code Ann. § 63-6-204 defines "practice of medicine."  Section 63-6-204(b) provides in pertinent part:

> Nothing in this chapter shall be so construed as to prohibit service rendered by a physician assistant, . . . if such service is rendered under the supervision, control and responsibility of a licensed physician. . . .

[3]  This statute applies to the provision of osteopathic service rendered by a physician assistant.

services only under the supervision of a licensed physician.[4] The range of services to be performed by the physician assistant "shall be set forth in a written protocol jointly developed by the supervising physician and the physician assistant," *id.* § (a)(2), and the physician assistant "may perform only those tasks that are within the physician assistant's range of skills and competence, that are within the usual scope and practice of the supervising physician, and that are consistent with the protection of the health and well-being of the patient." *Id.* § (a)(3).

In addition to the physician's supervisory function, Section 63-19-106(b) provides:

A physician assistant shall function only under the control and responsibility of a licensed physician. The supervising physician has complete and absolute authority over any action of the physician assistant. There shall, at all times, be a physician who is answerable for the actions of the physician assistant and who has the duty of assuring that there is proper supervision and control of the physician assistant and that the assistant's activities are otherwise appropriate.

Chapter 0880-3 of the Rules and Regulations of the Tennessee Board of Medical Examiners, titled "General Rules and Regulations Governing the Practice of a Physician Assistant," requires that the services performed by the physician assistant "must form a usual component of the supervising physician's scope of practice," Rule 0880-3-.02, and that there be a written protocol developed jointly between the supervising physician and the physician assistant outlining the services to be performed by the physician assistant. Rule 0880-3-.10.[5] Chapter 0880-2-.18, governing the supervision of physician assistants, provides in pertinent part that the protocols "shall outline and cover the applicable standard of care," Rule 0880-2-.18(5)(b), and that the supervising physician "shall be responsible for ensuring compliance with the applicable standard of care under (5)." Rule 0880-2-.18(5).

Dr. Mangione testified as to the standard of care, as follows:

> Q. The opinions that you have expressed today are based upon your knowledge, experience and training as a cardiologist; is that correct?
> A. Correct.
> Q. In all fairness, Doctor, you're expressing opinions of standard of care involving a primary care physician and a PA; is that correct.
> A. Say again, now.
> Q. Yes, sir. Do you know the standard of care applicable to a physician assistant in Middle Tennessee?

---

[4] Supervision requires "active and continuous overview of the physician assistant's activities to ensure that the physician's directions and advice are in fact implemented, but does not require the continuous and constant physical presence of the supervising physician." Tenn. Code Ann. § 63-19-106(a)(1).

[5] This is substantially the same requirement as set forth at Tenn. Code Ann. § 63-19-106(a)(2).

A.  I would assume that the standard of care of a physician assistant would be the standard of care of a primary care provider.

Q.  Do you know the standard of care applicable to a primary care physician in Middle Tennessee, Rutherford County?

A.  I believe so.

Q.  How is it that you know that if you've never practiced that?

A.  If I've never practiced as a primary care physician?

Q.  Yes, sir.

A.  The diagnosis of a condition – a primary care physician's responsibility to diagnose a condition is the same responsibility of an emergency room physician and the primary care physician as well.  The primary care physician made the diagnosis in this case.

We disagree with the trial court and find that Dr. Mangione's testimony was sufficient to comply with Tenn. Code Ann. § 29-26-115(a)(1).  Pursuant to statute and applicable regulations, the services provided by a physician assistant are provided under the supervision of a licensed physician and within the scope of practice of that physician, who is responsible for the treatment rendered by the physician assistant.  Consequently, the standard of care applicable to a physician assistant is that of the supervising physician in the community in which the supervising physician practices.

B.  The Summary Judgment Motion

The summary judgment analysis has been clarified in two recent opinions by the Tennessee Supreme Court.  *See Martin v. Norfolk Southern Railway Co.*, No. E2006-01021-SC-R11-CV, 2008 WL 4922434, ___ S.W.3d ___ (Tenn. Nov. 14, 2008); *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008).  A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Tenn. R. Civ. P. 56.04; *accord Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000).  The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993).  Accordingly, a properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *See Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).  The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial.  *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008); *see also McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.5.  If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist.  *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215.  The nonmoving party may satisfy its burden of production by:

(1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*McCarley*, 960 S.W.2d at 588; *accord Byrd*, 847 S.W.2d at 215 n.6.

Applying this analytical framework to this case, in order to shift the burden of production to Ms. Cox, Dr. Adams and the Clinic were required to either affirmatively negate an essential element of Ms. Cox' claim or show that she could not prove an essential element of her claim at trial. If they made this required showing, then Ms. Cox was required to produce evidence of specific facts establishing that genuine issues of material fact exist.

In support of their motion for summary judgment, Dr. Adams and the Clinic filed the affidavits of Dr. Adams and Mr. Maddox. Both set forth the history of their involvement with Ms. Cox and stated that the care provided her "complied with the recognized standard of professional practice of a physician assistant practicing in Rutherford County, Tennessee."[6] In addition, Dr. Adams' affidavit states that his supervision of Mr. Maddox "complied with the recognized standard of acceptable professional practice of a physician serving in the position of supervising physician or a physician assistant" and that the professional services he rendered Ms. Cox "complied with the recognized standard of acceptable professional practice of a physician practicing family medicine and a physician serving as supervising physician of a physician assistant."

The affidavits of Dr. Adams and Mr. Maddox negated an essential element of Ms Cox' claim, *viz.*, that they failed to render services in accordance with the applicable standard of care, thereby shifting the burden to her to come forward with proof to establish a triable issue of fact.

Dr. Mangione provided the following testimony providing specifics of Mr. Maddox' failure to comply with the standard of care:

> Q. The way you phrased it earlier is he failed to perform the necessary diagnostic studies in order to make the diagnosis in a timely fashion.
> A. Correct.
> Q. Is there anything else that you feel Mr. Maddox did that failed to meet the standard of care?
> A. No.
> * * *
> Q. What in you opinion was it that Mr. Maddox did not diagnose?

---

[6] Although Mr. Maddox states that his involvement with Ms. Cox was during the years 2003 and 2004, his affidavit refers to the "medical care which I provided to Melissa Cox in 2002 and 2003" as in compliance with the standard of care.

A. He did not diagnose pulmonary edema.

Q. Is there anything else in your opinion that Mr. Maddox failed to diagnose?

A. Because he failed to recognize pulmonary edema, he failed to diagnose cardiomyopathy. And because he failed to diagnose cardiomyopathy, he failed to diagnose mitral insufficiency.

We find that this testimony is sufficient to establish a genuine issue of material fact relative to the requirement of Tenn. Code Ann. § 29-26-115(a)(2) and that, consequently, Ms. Cox met her burden to produce evidence of specific facts establishing that genuine issues of material fact exist.

The trial court also held that there was no proof that Ms. Cox suffered injuries as a proximate result of the physician's negligent act or omission which would not have otherwise occurred. We have reviewed the testimony of Dr. Mangione and note the following testimony which is sufficient to create a genuine issue of material fact on the causation requirement:

Q. What injury or damage or consequence did Ms. Cox have because of the existence of the mitral valve defect?

A. The problem with mitral valve insufficiency is that the heart muscle – if mitral insufficiency is caught early enough and the problem is surgically corrected, then the development of cardiomyopathy can be aborted. So by not making this diagnosis quickly, she developed a cardiomyopathy that resulted in other complications.

Q. What other complications?

A. Well, she has subsequently required a PACE maker implanted – a device implantation for her cardiomyopathy, and her prognosis has been altered as a consequence of the development of the cardiomyopathy.

C. Negligent Supervision

Dr. Adams and the Clinic contend that Ms. Cox raises on appeal a theory of recovery, Dr. Adams' negligent supervision of Mr. Maddox, which was not alleged in her complaint. In light of our disposition of this appeal, we make no determination as to the appropriateness or viability of such claim.

**III. Conclusion**

The judgment of the trial court dismissing this case is reversed and the case is remanded for further proceedings in accordance with this Opinion.

Costs are assessed to M.A. Primary Care and Urgent Care Clinic and Austin Adams, equally, for which execution may issue, if necessary.

_____
RICHARD H. DINKINS, JUDGE