OPINION
JANICE M. HOLDER, C.J.,
delivered the opinion of the court,
in which WILLIAM M. BARKER, CORNELIA A. CLARK, and GARY R. WADE, JJ., joined. WILLIAM C. KOCH, JR., J., dissenting.
The defendant failed to print the plaintiffs’ advertisement and business listings in a telephone directory. The plaintiffs filed suit against the defendant claiming loss of profits and other damages as a result of the omission. The defendant moved for summary judgment alleging the plaintiffs *3 were unable to prove they were damaged. The trial court granted the defendant’s motion for summary judgment. The Court of Appeals held that the defendant failed to negate an essential element of the plaintiffs’ claim and reversed the trial court’s judgment. We affirm the Court of Appeals’ decision and remand to the trial court.
I. Facts and Procedural History
The plaintiffs, Michael and Elizabeth Hannan (“the Hannans”), owned and operated two businesses in Tellico Plains, Tennessee — Tellico Plains Realty and Magnolia House Bed and Breakfast. The Hannans advertised these businesses in telephone directories published by the defendant, Alltel Publishing Co. (“Alltel”). From November 2001 through November 2004, the Hannans placed a quarter-page advertisement containing information for both businesses in the yellow pages directory. In November 2003, however, the yellow pages directory was published without the Hannans’ quarter-page advertisement. In addition, Alltel omitted Tel-lico Plains Realty from the November 2003 white pages directory and failed to list Tellico Plains Realty under the “Real Estate” heading of the yellow pages directory. The yellow pages directory did contain a listing for Tellico Plains Realty under the “Real Estate Consultants” heading. Alltel included listings for the Magnolia House Bed and Breakfast in both the white and yellow pages.
The Hannans contacted Alltel about the missing yellow pages advertisement and the omitted white and yellow pages directory listings, and Alltel informed them that a supplement to the directories would be published. Alltel published the directory supplement with the previously omitted listings in the white pages for Tellico Plains Realty and in the yellow pages un-
der the heading of “Real Estate.” The supplement, however, did not include the Hannans’ quarter-page yellow pages advertisement. To compensate the Hannans for the omission, Alltel printed the Han-nans quarter-page yellow pages advertisement the following year at no charge.
The Hannans filed suit against Alltel, claiming that as a result of the omissions from the November 2003 directory:
Plaintiffs have lost business and have been unable to expose their business to the public and many of their associates have assumed they have left the business and departed from the Tellico Plains area. Plaintiffs have suffered a dramatic loss of business and have suffered much economic loss and emotional distress so that they have been forced to leave the real estate and bed and breakfast business.
[[Image here]]
[The Defendant’s] failure to provide the advertising purchased by the Plaintiffs and particularly their failure to include Plaintiffs [sic] name in the regular white and yellow pages of the directory amounts to actionable negligence and provides a cause of action for recovery. ...
The Hannans sought damages in the amount of $225,000.
Alltel filed a motion for summary judgment claiming that the Hannans “are unable to prove they suffered any damages as a result of Alltel’s alleged breach of contract.” Alltel pointed to the Hannans’ tax returns from the years 2001 through 2004 to show that the Hannans’ gross income increased from $42,138 in 2003, a year in which the directories contained the advertisement and listings for nearly the entire year, to $69,355 in 2004, the calendar year in which the advertisement was omitted from the yellow pages directory for a period of eleven months.
*4 In addition, Alltel relied upon the Han-nans’ deposition testimony as evidence that the Hannans would be unable to prove they sustained damages as a result of the omitted advertisement. This testimony concerned the Hannans’ increased gross income in 2004 and their inability to quantify their damages. Specifically, Alltel relies on the following deposition testimony from Michael Hannan:
Q Would you agree with me that your gross receipts were up significantly in the year that your business was not listed as compared to the previous year when you were listed?
A That our gross sales were—
Q Significantly higher in the year that you weren’t listed as compared to the year you were listed?
A If you are asking me to compare those two lines, yes.
Q And you told me you cannot give an explanation for that?
A Other than the fact that we may have sold a piece of our own property, I don’t know. We may have had to start to liquidate by then.[1]
Alltel also relied on the following testimony from Elizabeth Hannan:
Q Your husband responded to my questions about quantifying in dollars the amount of loss or documentation which would reflect the amount of loss for these omissions that we’re here about. Do you have any way of doing that?
A I have absolutely no way of doing that. And neither does anyone else.
In addition to the motion for summary judgment, Alltel filed a Statement of Material Facts Not in Dispute. Alltel contended that the following material issues were not in dispute: in November 2003, the Hannans paid Alltel to publish an advertisement in the local phone directory; the advertisement was not placed in the initial directory although the business listing was included under the heading “Real Estate Consultants” in the directory; the advertisement was placed in a supplement to the 2003 telephone directory;[2] the Hannans placed advertisements in the phone directory in 2001, 2002, and 2004; and the Hannans’ gross income for each of the years 2001 through 2004 was $87,703, $55,645, $42,138, and $69,355, respectively. The Hannans’ response to the motion for summary judgment stated that the Han-nans agreed with Alltel’s statement of the material facts not in dispute and that the Hannans would establish damages by proof at trial. The trial court granted *5 Alltel’s motion for summary judgment. On appeal, the Court of Appeals reversed, finding that Alltel failed to negate an essential element of the Hannans’ claim. We granted Alltel’s application for permission to appeal.
II. Analysis
Summary judgment is appropriate when the moving party can show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; Byrd v. Hall, 847 S.W.2d 208, 214 (Tenn.1998). In Byrd, this Court set out the basic principles involved in determining whether a motion for summary judgment should be granted. The moving party has the ultimate burden of persuading the court that “there are no disputed, material facts creating a genuine issue for trial ... and that he is entitled to judgment as a matter of law.” Byrd, 847 S.W.2d at 215. If the moving party makes a properly supported motion, the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists. Id. To meet its burden of production and shift the burden to the nonmoving party, the moving party must either affirmatively negate an essential element of the non-moving party’s claim or establish an affirmative defense. Id. at 215 n. 5. If the moving party does not satisfy its initial burden of production, the court should dismiss the motion for summary judgment. See id. at 215. Summary judgment should be granted only when, with the facts viewed in favor of the nonmoving party, it is clear that no genuine issue of material fact exists. Id. at 210-11.
In Byrd, we stated that the Tennessee and federal rules for summary judgment were “virtually identical,” and thus federal cases provided “helpful guidance” in our interpretation of Tenn. R. Civ. P. 56. Id. at 211 & n. 2. These statements have led to some confusion among Tennessee courts as to the proof required for the moving party to meet its burden of production. Although we stated that interpretations of both rules are “consistent in most material respects,” this Court also stated that “con-clusory assertion[s]” were not sufficient to shift the burden to the nonmoving party. Id. at 214, 215 (emphasis added).
In the seminal case governing federal summary judgment procedure, Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the plurality opinion held that a moving party may shift the burden of production to a nonmoving party by alleging that “there is an absence of evidence to support the nonmoving party’s case.” Id. at 325, 106 S.Ct. 2548. The Sixth Circuit, for example, has read Celotex to allow the moving party to merely challenge the nonmoving party to “put up or shut up” on a critical issue to shift the burden of production. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989). The moving party shifts the burden of production simply by “asserting that the opposing party will not be able to produce sufficient evidence at trial.” Id. Then, if the nonmoving party cannot “put up” the evidence needed to show a material fact is in dispute, summary judgment will be granted. Id. Decisions within the federal circuits vary, but most seem either to follow the “put up or shut up” approach or to require the moving party merely to point to deficiencies in the nonmoving party’s evidence. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir.2000); Fairbanks v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir.2000); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir.1998); Russ v. Int’l Paper Co., 943 F.2d 589, 592 (5th Cir.1991); Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991); Whetstine v. Gates Rubber Co., 895 F.2d 388, 394-95 (7th Cir. *6 1990); Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1172-73 (1st Cir.1988).
This Court did not adopt a “put up or shut up” approach to burden-shifting in Byrd or in subsequent cases. Citing to Justice Brennan’s dissenting opinion in Celotex, we held that the moving party must either conclusively establish an affirmative defense or “affirmatively negate an essential element of the nonmoving party’s claim” to shift the burden of production to the nonmoving party. Byrd, 847 S.W.2d at 215 n. 5; see also Celotex, 477 U.S. at 381, 106 S.Ct. 2548 (Brennan, J., dissenting).
Although in Byrd we cited to Justice Brennan’s dissenting opinion in Celotex, the two opinions differ in some important respects. Justice Brennan’s dissent offers the moving party two possible methods of shifting the burden to the nonmoving party: (1) “the moving party may submit affirmative evidence that negates an essential element of the nonmoving party’s claim,” or (2) “the moving party may demonstrate to the Court that the nonmoving party’s evidence is insufficient to establish an essential element of the nonmoving party’s claim.” Celotex, 477 U.S. at 331, 106 S.Ct. 2548. In Byrd, we adopted Justice Brennan’s first method of shifting the burden of production, permitting the moving party to submit affirmative evidence that negates an essential element of the non-moving party’s claim. We did not adopt Justice Brennan’s second method of burden-shifting. In its stead, we permitted a moving party to shift its burden by establishing “an affirmative defense.” Byrd, 847 S.W.2d at 215 n. 5. Justice Brennan’s dissenting opinion does not discuss the use of an affirmative defense as a possible option for the moving party to satisfy its burden of production. See Celotex, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting).
Byrd defines an affirmative defense as “i.e., a defendant would be entitled to summary judgment if he demonstrated that the nonmoving party cannot establish an essential element of his case.” Byrd, 847 S.W.2d at 215 n. 5. Clearly, this characterization of “affirmative defense” conflicts with its most commonly understood definition: “In pleading, [a] matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it.” Black’s Law Dictionary 60 (6th ed.1990); see also Tenn. R. Civ. P. 8.03 (describing “affirmative defenses” such as accord and satisfaction, arbitration and award, express assumption of risk, comparative fault, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, res judi-cata, statute of frauds, statute of limitations, statute of repose, waiver, and workers’ compensation immunity); Judy M. Cornett, The Legacy of Byrd v. Hall: Gossiping about Summary Judgment in Tennessee, 69 Tenn. L.Rev. 175, 190 (2001) (noting that Byrd’s definition of affirmative defense “yoked together two disparate means of carrying the movant’s burden”).
This characterization of “affirmative defense” has caused understandable confusion. In later cases, this Court has cited to Byrd as providing the moving party only two methods for shifting its burden: (1) the moving party may affirmatively negate an essential element of the non-moving party’s claim; or (2) the moving party may establish an affirmative defense. See Blair v. W. Town Mall, 130 S.W.3d 761, 768 (Tenn.2004); Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 88 (Tenn.2000); McCarley v. W. Quality Food Serv., 960 S.W.2d 585, 588 (Tenn.1998). In these cases, we have not been called upon to discuss Byrd’s definition of “affirmative defense.” See Blair, 130 S.W.3d at 768; Staples, 15 S.W.3d at 88; McCarley, 960 *7 S.W.2d at 588. We now acknowledge that this Court in Byrd misused the term “affirmative defense” in describing a different, yet valid, method of burden-shifting.[3] Thus, a moving party may shift the burden of production to the nonmoving party by showing that the nonmoving party cannot establish an essential element of the claim at trial.
This second method of shifting the burden of production outlined in the Byrd opinion also differs significantly from Justice Brennan’s second method of burden-shifting. The opinion in Byrd requires a moving party to demonstrate that the non-moving party cannot establish an essential element of the claim at trial. Byrd, 847 S.W.2d at 215 n. 5. Justice Brennan, however, would give the moving party the easier burden of demonstrating that the nonmoving party’s evidence — at the summary judgment stage — is insufficient to establish an essential element. See Celotex, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting). Therefore, the standard we adopted in Byrd clearly differs from Justice Brennan’s standard and poses a heavier burden for the moving party.
Our discussion shows that in Byrd, despite language suggesting the contrary, we began our departure from the federal standard and continued that departure in McCarley, and in subsequent cases. One commentator agrees and has noted that “the Byrd court set Tennessee on a path that appears to have spared us the dubious practices spawned by Celotex. ... The Byrd decision, and especially the McCarley court’s insistence on the analytical framework enunciated in Byrd, has provided a reasonable, predictable summary judgment jurisprudence for our state.”[4] Cornett, supra note 3, at 220.
In McCarley v. W. Quality Food Serv., 960 S.W.2d 585, this Court reaffirmed the burden-shifting principles announced in Byrd and reversed the summary judgment when the moving party supported its motion with only the allegation that the non-moving party could not prove an essential element of its case at trial. In that case, the plaintiff filed suit against the defendant restaurant for negligence in serving undercooked chicken that resulted in food poisoning. The restaurant moved for summary judgment, identifying evidence in the record that showed the plaintiffs food poisoning could have been caused by bacon eaten earlier that day. The plaintiff had tested neither the bacon nor the chicken for bacteria, and the plaintiffs doctor was unable to pinpoint the cause of the food poisoning. The restaurant’s motion asserted that the plaintiff would be unable to prove causation at trial and therefore summary judgment was appropriate. The trial court granted summary judgment. On appeal, this Court held that although the restaurant “cause[d] doubt” as to the causation of the plaintiffs illness, it failed to negate an essential element of the plaintiffs claim. Id. Therefore, the trial court prematurely considered the sufficiency of the nonmoving party’s evidence when the moving party failed to shift its burden of production.
*8 In Blair v. W. Town Mall, 180 S.W.3d 761, the defendant moved for summary-judgment in a slip-and-fall case, alleging that the plaintiff did not establish a prima facie case of negligence. In support of the motion, the defendant offered the plaintiffs deposition testimony that she did not know how long the slippery substance had been present on the parking lot or whether the defendant knew of its presence. We acknowledged that this evidence cast doubt on whether the plaintiff could offer proof at trial to show the defendant had notice of the dangerous condition. The deposition testimony, however, did not affirmatively negate an essential element of the plaintiffs claim because the evidence did not show that the defendant lacked notice of the dangerous condition. Id. at 768. Thus, the defendant failed to shift the burden of production to the plaintiff, and the trial court improperly granted the summary judgment motion. Id.[5]
This Court has reaffirmed these burden-shifting principles when faced with a moving party’s conclusory allegations. In Blanchard v. Kellum, 975 S.W.2d 522, 525 (Tenn.1998), the defendant physician moved for summary judgment and supported her motion with an affidavit that stated simply that she provided acceptable medical treatment and did not violate the standard of care. We reversed the summary judgment because this conclusory affidavit in support of her motion failed to negate an essential element of the plaintiffs claim or establish an affirmative defense. Id. In Staples v. CBL & Associates, Inc., 15 S.W.3d at 88, we affirmed that “[t]o properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party’s claim or conclusively establish an affirmative defense.”
These cases clearly show that a moving party’s burden of production in Tennessee differs from the federal burden. It is not enough for the moving party to challenge the nonmoving party to “put up or shut up” or even to cast doubt on a party’s ability to prove an element at trial. Nor has our Court ever followed the standard put forth by Justice Koch in his dissent, that the moving party may simply show that the nonmoving party “lacks evidence to prove an essential element of its claim.” See Blair, 130 S.W.3d at 768; Staples, 15 S.W.3d at 88; McCarley, 960 S.W.2d at 588. This standard is identical to Justice Brennan’s standard, which we rejected in Byrd. Byrd, 847 S.W.2d at 215 n. 5; see Celotex, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting).
In summary, in Tennessee, a moving party who seeks to shift the burden of *9 production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party’s claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial.[6]
Justice Koch asserts in his dissent that our opinion today “brushes aside fifteen years of post-Byrd v. Hall precedent,” but he cites only to Court of Appeals cases that purport to follow his desired approach. To the contrary, we are upholding over ten years of Tennessee Supreme Court precedent, beginning with this Court’s reiteration of the Byrd principles in McCarley and continuing in Blanchard, Staples, and Blair. See also Doe ex rel. Doe v. Roman Catholic Diocese of Nashville, 154 S.W.3d 22, 41 (2005); Robinson v. Omer, 952 S.W.2d 423, 426 (Tenn.1997). Our decision today is true to McCarley through Blair. It is Justice Koch’s view that, if adopted, effectively would overturn ten years of post-Byrd precedent.
Justice Koch also asserts that imposing a less stringent standard on the moving party is necessary to keep Tennessee’s growing caseload under control and to conserve judicial resources. Justice Koch cites to statistics showing that the number of cases filed every year has increased since the 1960s. These studies, however, focus on state courts generally, and some of the studies are more than twenty years old. With regard to Tennessee specifically, Justice Koch states that “Tennessee is no exception, with a clearance rate below one hundred percent in 2005.”[7] The dissent fails to note, however, that the clearance rate of civil cases in Tennessee has hovered between 93% and 100% over the last eight years[8] during which the summary judgment standard refined in McCarley has been the rule. The most recently available data shows that in fiscal year 2006-2007, Tennessee chancery and circuit courts had clearance rates of 96% and 97% respectively.[9] Further, according to the study cited by Justice Koch in his dissent, Tennessee ranked last among the states in civil filings per capita with 1,275 *10 cases filed per 100,000 citizens.[10] So it appears Tennessee is an exception. The citizens of Tennessee tend to be less litigious than other U.S. citizens, and our trial courts have done an excellent job in keeping pace with the number of filings every year. While we agree that summary judgment should be utilized to weed out frivolous claims, there is no evidence that the burden-shifting structure put in place by Byrd and further refined in McCarley through Blair does not already do so.
In this case, the Hannans have alleged that Alltel was negligent in failing to print the advertisements. Alltel, on the other hand, characterizes the Hannans’ claim as a breach of contract claim rather than a negligence claim. At this stage, we have not been called upon to determine this issue, and we leave such determination to the trial court upon remand.[11] What is clear, however, is that the Hannans must be able to prove that they were damaged. The existence of damages cannot be uncertain, speculative, or remote. Overstreet v. Shoney’s, Inc., 4 S.W.3d 694, 703 (Tenn.Ct.App.1999) (discussing damages in tort law); Cummins v. Brodie, 667 S.W.2d 759, 765 (Tenn.Ct.App.1983) (discussing damages for breach of contract). The amount of damages may be uncertain, however, if the plaintiff lays a sufficient foundation to allow the trier of fact to make a fair and reasonable assessment of damages. Overstreet, 4 S.W.3d at 703; Western Sizzlin, Inc. v. Harris, 741 S.W.2d 334, 336 (Tenn. Ct.App.1987) (discussing damages for breach of contract); Cummins, 667 S.W.2d at 765. Thus, no recovery is available for loss of profits when it is uncertain whether any profits would have been made. See Harris, 741 S.W.2d at 335.
Alltel contends that summary judgment is appropriate because the Han-nans cannot prove within a reasonable degree of certainty that they suffered damages. They base this assertion on: (1) the Hannans’ tax returns showing an increase in gross income during the year the advertisement was omitted and Mr. Hannan’s deposition testimony that he could not explain the increase in gross income; and (2) Mrs. Hannan’s deposition testimony that neither she nor anyone else could determine the amount of damages sustained as a result of the omission. Thus, Alltel relies only upon evidence from the Hannans in support of its motion for summary judgment. Summary judgment may be appropriate for the moving party who relies upon evidence from the nonmoving party, but only if that evidence affirmatively negates an essential element of the nonmov-ing party’s claim or shows that the non-moving party cannot prove an essential element of the claim at trial. The moving party may not, however, merely point to omissions in the nonmoving party’s proof and allege that the nonmoving party cannot prove the element at trial. See Blair, 130 S.W.3d at 768.
The complaint and the deposition testimony of both of the Hannans consistently allege the existence of damages. What is clear from the deposition testimony is that neither party can quantify the amount of damages. The relevant question then is whether this failure to quantify the amount of damages is sufficient to show affirma *11 tively that the Hannans cannot provide proof sufficient to allow the trier of fact to make a fair and reasonable assessment of the damages. See Harris, 741 S.W.2d at 386. The assertion of damages in a specific amount, however, is not required. At trial, the Hannans must provide a foundation that would allow a fair and reasonable assessment of damages, and neither party has indicated that this foundation cannot be provided. Rather, taken as a whole, the Hannans state only that there is no way to quantify in dollars, nor is there documentation of, the precise amount of damages sustained as a result of the omission. Therefore, the deposition testimony does not negate an essential element of the Hannans’ claim, nor does it show that the Hannans cannot prove the existence of damages at trial.
The Hannans agree that the material issues of fact are as stated by Alltel. The Hannans do not agree, however, with the inferences drawn from those facts. Alltel contends that it is impossible to assess the existence of damages based upon the Han-nans’ tax returns, which show an increase in profits during the year the advertisement was omitted from the directory. While Alltel is correct that the Hannans’ tax returns do not prove damages, the tax returns do not disprove the existence of damages, nor do they foreclose the possibility that the Hannans will be able to prove the existence of damages at trial. Therefore, Alltel’s reliance on the Han-nans’ tax returns does not negate an essential element of the Hannans’ claim and does little more than cast doubt as to whether the Hannans lost income.[12] In fact, Alltel only asserts that the Hannans could not use the tax returns to prove damages. This clearly falls short of meeting the moving party’s burden of production in Tennessee.
III. Conclusion
Because Alltel failed to negate an essential element of the Hannans’ claim or show that the Hannans could not prove an essential element of their claim at trial, the burden never shifted to the Hannans to show that they could prove damages. Therefore, summary judgment was inappropriate. The judgment of the Court of Appeals is affirmed. Costs on appeal are taxed to the appellant, Alltel Publishing Co., for which execution may issue if necessary.
WILLIAM C. KOCH, JR., J., dissenting.

. Alltel also relied on the following deposition testimony from Michael Hannan:
Q Do you know why or do you have an explanation for why in the year preceding the failure to list you had such a low net profit of only $2,000, $1,949?
A I still can’t tell you. I couldn’t tell you earlier; I can’t tell you now. I don't know how this stuff works. I presume, it's possible that we could have paid a debt or something; I don’t know. We could have lowered the amount of money we owed on a piece of land for instance. I don't know the answer.
Alltel relies on this exchange to show that the Hannans cannot prove the amount of damages sustained as a result of the omitted advertisement. Michael Hannan's inability to explain the low net profit occurring the year prior to the omission is only marginally relevant, however, to the amount of income that would have resulted from the advertisement because, in addition to gross income, net profit reflects the Hannans’ expenses for that year, which would be unrelated to the advertisement.
2. According to deposition testimony and copies of the supplemental directory attached to Alltel's motion for summary judgment, the advertisement was not placed in the supplemental directory. Rather, only the missing directory listings were placed in the supplemental directory.

. Noting the curious use of the term "affirmative defense” in Byrd, Professor Cornett observes that an affirmative defense is "a traditional way for the defendant to defeat the plaintiff’s claim by carrying its own burden of proof.” Judy M. Cornett, The Legacy of Byrd v. Hall: Gossiping about Summary Judgment in Tennessee, 69 Tenn. L Rev. 175, 189-90, 208 (2001).

. The dissent’s quotation of this language conspicuously omits the commentator’s reference to this Court’s "insistence [in McCarley ] on the analytical framework enunciated in Byrd " as providing "a reasonable, predicable summary judgment jurisprudence in this state.” Cornett, supra, note 3, at 220.

. In addition to the cases cited, several Court of Appeals cases have found that the moving party successfully negated an essential element of the nonmoving party’s claim. See Hinson v. Claiborne & Hughes Health Ctr., No. M2006-02306-COA-R3-CV, 2008 WL 544662, *5-6 (Tenn.Ct.App. Feb.26, 2008) (holding that expert opinion that the physician did not cause an injury negated the causation element of plaintiff's medical malpractice claim); Burnette v. Estate of Guider, No. E2006-01164-COA-R3-CV, 2007 WL 4548292, *4 (Tenn.Ct.App. Dec.27, 2007) (holding that a claim for actual agency was negated by the purported principal's affidavit that no agency relationship existed); McPherson v. Shea Ear Clinic, No. W2006-01936-COA-R3-CV, 2007 WL 1237718, *6 (Tenn.Ct.App. Apr.27, 2007) (holding that defendant's affidavit that no contract existed negated the plaintiff’s third party beneficiary claim); Lawson ex rel. Lawson v. Edgewater Hotels, Inc., 167 S.W.3d 816, 821-22 (Tenn.Ct.App.2004) (holding that the defendant successfully negated the plaintiff's claim that the hotel pool was over-chlorinated by providing records that showed an employee checked chlorine levels on the day in question and recorded the proper level of chlorine).

. These are the two burden-shifting methods available to the moving party when the moving party does not bear the burden of proof at trial. The burden-shifting analysis differs, however, if the party bearing the burden at trial is the moving party. For example, a plaintiff who files a motion for partial summary judgment on an element of his or her claim shifts the burden by alleging undisputed facts that show the existence of that element and entitle the plaintiff to summary judgment as a matter of law. Similarly, a defendant asserting an affirmative defense, such as lach-es, shifts the burden of production by alleging undisputed facts that show the existence of the affirmative defense.

. A "clearance rate” is a percentage computed by comparing the number of cases filed in a certain year with the number of case dispositions within that year. The number of case filings and the number of case dispositions, however, may or may not be related to the same cases within a certain year. In other words, a case may be filed in one fiscal year and disposed of within the next fiscal year. Nonetheless, this percentage indicates whether the courts have a backlog of cases at the end of any particular fiscal year. Ideally, courts would always have a clearance rate of 100%.

. Annual Report of the Tennessee Judiciary, Fiscal Year 2006-2007 Statistics, at 21, available at http://www.tsc.state.tn.us/geninfo/ Publications/AnnualReport/20 06-2007/2006-07% 20annual% 20report% 20statistics.pdf. The clearance ratings were derived from the number of filings and dispositions reported in the annual report for both the chancery and circuit courts.

. In fiscal year 2005-2006, the year Justice Koch notes that Tennessee courts had less than a 100% clearance rate, the chancery and circuit courts had a 97% and 98% clearance rate respectively. See Annual Report of the Tennessee Judiciary, supra note 8, at 21.

. Examining the Work of State Courts, 2006: A National Perspective from the Court Statistics Project 28 (Robert C. LaFountain et at, eds., National Center for State Courts 2007) available at http://www. ncsconline.org/D_Research/csp/2006_files/EWSC-2007WholeDoc-ument.pdf. The next least litigious state was Hawaii with 2,003 filings per 100,000 citizens.

. We note, however, that we have never recognized a tort of "negligent breach of contract.”

. In addition, Alltel’s argument is based on a faulty premise. Alltel assumes that all of the gross sales in 2004 resulted from a period during which the directories contained no advertising. This assumption ignores the realities of the real estate business — a property listed for sale may not realize profits until a much later date. For example, a property listed for sale in October 2003, when advertising was included in the directories, may not be sold until January 2004. The proceeds from that sale would be included in the 2004 federal income tax return, although it was the 2003 advertising that was responsible for attracting the seller who listed the property with the Hannans. In short, the link between the Hannans’ tax year and the effect of the advertisement or lack thereof is tenuous at best.

. 12A Federal Practice and Procedure All advisory committee's note to 1963 Amendment to Fed.RCiv.P. 56(e), app. C.