# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
November 7, 2011 Session

## G. KENNETH CAMPBELL ET AL. V. JAMES E. HUDDLESTON ET AL.

**Appeal from the Chancery Court for Anderson County**
**No. 07CH7666     William E. Lantrip, Chancellor**

---

### No. E2011-00174-COA-R3-CV-FILED-DECEMBER 27, 2011

---

James E. Huddleston and his wife, Patricia M. Huddleston ("the Sellers"), sold their house to G. Kenneth Campbell and his wife, Teresa J. Campbell ("the Buyers'). The Buyers inquired of the Sellers as to whether there had been flooding in the house. The Sellers disclosed that there had been one flood in the basement to a depth of six inches. During the course of some later renovations, the Buyers became aware the Sellers had indicated, on a wall stud, that there had been a 1998 flood in the basement to a depth of 38 inches. They also learned the Sellers had made an insurance claim for another flood in 2003[1] that was nearly one-foot deep. The Buyers filed this tort action sounding in fraudulent concealment and fraudulent misrepresentation. The Sellers filed a motion for summary judgment asserting that, since the Buyers were made aware of the one "six inch" flood, they could not have relied on the misrepresentations with respect to the full extent of the two flooding events. The trial court granted the motion and dismissed the case. The Buyers appeal. We vacate the order granting summary judgment and remand for further proceedings before a different trial judge.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Jennifer L. Chadwell, Oak Ridge, Tennessee, for the appellants, G. Kenneth Campbell and Teresa J. Campbell.

Kenneth W. Ward, Knoxville, Tennessee, for the appellees, James E. Huddleston and Patricia M. Huddleston.

---

[1]Apparently, the disclosed "six inch" flood was actually the 2003 flood of nearly one foot.

# OPINION

## I.

The Sellers' motion for summary judgment asserts that the Buyers "are unable to show the element of reasonable reliance in their claim of fraudulent misrepresentation." The Sellers' statement of undisputed facts submitted in support of their motion does not deny that the property flooded, but asserts, repeatedly, that the Buyers were made aware that the property had flooded on at least one occasion.

In response to the motion for summary judgment, the Buyers asserted that

> a genuine issue of material fact exists as to [the Buyers'] reliance on misrepresentations made by Defendant James Huddleston concerning the extent of flooding of the property . . . in that Mr. Huddleston represented that the interior of the property only flooded one time to a depth of six inches when actually the interior of the property flooded twice, once in April 1998 to a depth of 38 inches and again in 2003 to a depth of 11 ½ inches. [The Sellers] knew the extent of both episodes of flooding and knowingly concealed these facts from the [Buyers] prior to the closing on the property.

The Buyers also filed a statement of undisputed facts, supported with citations to deposition testimony of the parties, that includes the following:

> Prior to closing on this property, Ms. Campbell asked James Huddleston if the house had ever flooded.
>
> Mr. Huddleston responded that the house had flooded only once to a depth of six inches.
>
> Mr. Huddleston informed the [Buyers] that he had purchased flood insurance after the flood because it was so cheap.
>
> The [Buyers] proceeded to purchase the property after deciding they could install a french drain or landscaping to prevent the

property from flooding again since it had only flooded six inches once.

After purchasing this property, Mr. Campbell performed renovations in the basement and discovered a mark on the wall stud behind a sheet of waferboard which said "WATER LINE 4/17/98."

The water line was marked in the basement by Mr. Huddleston and was 38 inches from the floor.

\* \* \*

Prior to finding this water mark, the [Buyers] had no indication that the house had flooded 38 inches.

At the time of the closing on the property, the [Sellers] knew that the basement had flooded 38 inches and never mentioned this fact to the [Buyers].

The [Sellers] received a small business loan after the 1998 flood to pay for the damage in the amount of approximately $10,000.00.

After the 1998 flood, the [Sellers] obtained flood insurance.

The house . . . flooded again in 2003 while the [Sellers] were living there.

The [Sellers] filed a claim with their insurance company after the 2003 flood and received payment for the damages in the amount of $11,669.41.

The basement . . . flooded to an interior depth of 11 ½ inches in 2003.

\* \* \*

The wall with the water mark was covered with OSB[2] at the time the [Buyers] looked at the residence.

Prior to the [Buyers] looking at the property, Mr. Huddleston painted the waferboard which covered the wall stud with the water line.

There was no visible indication of water intrusion in the basement of the . . . residence when the [Buyers] looked at the property.

Neither Mr. Huddleston [n]or Ms. Huddleston ever told the [Buyers] that the house had flooded to a depth of 38 inches.

(Capitalization in original; paragraph numbering and citations to record omitted; footnote added.)

The court sustained the motion for summary judgment based on

the record as a whole, including the holding and reasoning of *Israel v. Williams*, No. M1999-02400-COA-R3-CV, 2000 Tenn. App. LEXIS 565, (Tenn. Ct. App. Aug. 22, 2000) . . . . In particular, the Court found that [the Buyers] were placed on notice of prior flooding in the basement by the statements of Mr. Huddleston and by the Tennessee Residential Property Condition Disclosure Form [note: the form answered both "yes" and "unknown" to the question of whether the property had flooding, drainage or grading problems]. Based on this actual knowledge of the prior flooding in the basement, the [Buyers] elected to proceed with the sale knowing that there were potential problems with the basement, and that any reliance made on the statements of the [Sellers] was unjustifiable in light of the [Buyers'] actual knowledge about the prior flooding of the basement at issue.

---

[2]OSB stands for oriented strand board, an engineered wood product formed by layering strands (flakes) of wood in specific orientations. The finished product has similar properties to plywood. The most common uses are as sheathing in walls, floors, and roofs.

After the hearing on the Sellers' motion, the court approved a statement of the evidence submitted by the Sellers that stated the court "took all of the pleadings and the deposition transcripts filed by the parties into consideration as part of the basis for granting the [Sellers'] Motion for Summary Judgment." The statement of evidence further purports to articulate three specific findings that the court made, *i.e.*, (1) that the Buyers were on notice of prior flooding, (2) that the Buyers elected to proceed knowing there was a potential for flooding, and (3) that any reliance by the Buyers on the statements of the Sellers was unjustified.

## II.

The Buyers timely filed a notice of appeal. They state the following issues:

> Whether the trial court erred in granting summary judgment to [the Sellers] based on the holding of *Israel v. Williams*.

> Whether the trial court's ruling is against public policy.

## III.

The standard of review of a trial court's order dismissing a case on summary judgment was recently reiterated by the Supreme Court in *Federal Ins. Co. v. Winters*, ___S. W.3d ____, No. E2009-02065-SC-R11-CV, ____ S.W.3d ____, 2011 WL 5053138 at *3 (Tenn. filed Oct. 25, 2011).

> . . . [R]eview of a trial court's entry of summary judgment is a question of law. *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn.1997). In consequence, appellate courts attach no presumption of correctness to the decision of the trial court and must review the record de novo to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010). A court should grant a party's motion for summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The movant bears the ultimate burden of persuading the court "that there are no disputed, material facts creating a genuine issue for trial ... and that he is entitled to judgment as a matter of law." *Byrd*, 847

S.W.2d at 215. If the motion for summary judgment is properly supported, then the burden shifts to the non-moving party to show that a genuine issue of material fact exists. *Id*. At the summary judgment phase, "it is not the role of a trial or appellate court to weigh the evidence or substitute its judgment for that of the trier of fact." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 87 (Tenn. 2008) (*citing Byrd*, 847 S.W.2d at 211).

Once the parties have mustered their proof, the court must "view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). If more than one conclusion can be drawn from the facts presented, summary judgment is not proper. *Id*.

IV.

We begin our analysis by recognizing that the question of whether "reliance on alleged misstatements is reasonable is . . . generally a question of fact inappropriate for summary judgment." *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996). The dispositive question in the present case, then, is whether the Buyers' knowledge that the house had flooded once to a depth of "six inches" precludes, as a matter of law, any reliance on misstatements concerning the *full extent* of two floods.

The reasons given by the trial court for its conclusion in this case were its "consideration" of "all of the pleadings and deposition transcripts filed by the parties" and "the holding and reasoning of *Israel v. Williams*, No. M1999-02400-COA-R3-CV, 2000 Tenn. App. LEXIS 565, (Tenn. Ct. App. Aug 22, 2000)." From these various sources, the court made the express finding that "any reliance . . . on the statements of the [Sellers] was unjustifi[ed]." From our reading of the record, it appears that the trial court considered the totality of the deposition testimony and may have – perhaps unwittingly – slipped into the mode of weighing the evidence favorable to both sides in concluding that summary judgment was appropriate.

The only facts that should be considered when a court decides whether contested material issues remain for trial are those that favor the opponent of the summary judgment; countervailing evidence should be discarded and ignored. *Shipley v. Williams,*____ S.W.3d ____ , No. M2007-01217-SC-R11-CV, 2011 WL 3505281 at *4 (Tenn, filed Aug. 11, 2011)(*citing Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993)). At the stage in the proceedings when a grant or denial of summary judgment is being considered, the court must

avoid weighing the evidence or stepping into the shoes of the trier of fact. *Winters*, ____ S.W.3d at ____, 2011 WL 5053138 at *3.

Our review of the evidence presently before us persuades us that there are genuine issues of material fact in this case. The evidence is such that a trier of fact could reasonably find – and we stress the word "could" – (1) that telling the Buyers that there had been a singular flood of six inches when in fact there had been two floods, one to a height of almost twelve inches and another much more serious flood of three feet, two inches, was a misrepresentation; (2) that the misrepresentation was intentionally made; (3) that the misrepresentation pertained to a fact material to the judgment of the Buyers, *i.e.*, the propensity of the property to flood and the extent of the flooding when it did occur; (4) that the Buyers justifiably relied upon the misrepresentation because they reasonably believed that flooding potential of no more than six inches could be prevented by the installation of "a french drain or lanscapping;" and (5) that the Buyers relied upon the misrepresentation to their detriment and damage. The genuine issues of material fact presented by the record preclude a grant of summary judgment.

We also conclude that the court's reliance upon *Israel v. Williams*, No. M1999-02400-COA-R3-CV, 2000 WL 1183081 (Tenn. Ct. App. M.S., filed Aug. 22, 2000), is misplaced. *Israel* was like the present case in that it involved a seller's alleged misrepresentation concerning the "seriousness of . . . water problems in the basement." *Id*. at *2. However, the *Israel* opinion reveals two obvious and important differences:

> . . . [T]he Israels performed their own home inspection, hiring a professional inspector who found numerous problems with the basement including mildew, bulging and cracked walls, poor drainage, signs of damp walls and floors, seepage signs, water stains, and rotted and decayed wood. . . .
>
> . . . . After reviewing the inspection report the Israels had as much knowledge about the condition of the basement and the inside of the basement's walls as the Williams could. (Mr. and Mrs. Williams could no more see through the walls and know of the interior damage than the plaintiffs or their inspector.) Based on the information in the record and the residential inspection report, the Israels has as much (or more) knowledge as the Williams regarding the actual condition of and potential problems with the basement. . . .

-7-

*Id*. at \*5. In *Israel*, we found "no evidence that the defendants supplied faulty information." *Id*. In the present case we must accept as true the Buyer's evidence that there were no visible problems when they looked at the house. We must also accept as true the evidence that Mr. Huddleston made a high-water mark 38 inches from the floor and then covered it up so that it was not visible. Another important difference between *Israel* and the present case is the home inspection that gave the Israels knowledge equal to or greater than the defendants. The Sellers in the present case may argue to the trier of fact that the Buyers knew enough to have an inspection done, but we cannot conclude, as a matter of law, that they acted in an unreasonable manner in not having one done.

We are aware of two appellate cases that have upheld jury verdicts based on misrepresentations concerning the "extent" of flooding in a basement. In *Shropshire v. Roach*, No. M2007-02593-COA-R3-CV, 2009 WL 230236 (Tenn. Ct. App. M.S., filed Jan. 30, 2009), the seller of a home disclosed on the property disclosure form that after "a heavy rain last year [there was] some water in [the] basement." *Id*. at \*4. When asked about the flooding by the buyers, the seller stated that the floor had never gotten wet. *Id*. At trial, the seller's son testified that he had to remove standing water from the basement floor with a shop vacuum. *Id*. A jury returned a verdict against the seller, and she appealed. On appeal, she argued, among other things, that the buyers of her home could not have reasonably relied upon her misrepresentations because they were on notice of water problems with the basement. *Id*. This court rejected the seller's argument, which was based largely on *Israel*, and affirmed the jury verdict. *Id*. In the instant case, the Sellers argue that "[t]he nature of the misrepresentation made by the seller in the *Shropshire* case was much greater that the alleged misrepresentation in this case." We are not persuaded. Based on the facts we must credit at this summary judgment stage, the Sellers knew that water in the basement had risen to 38 inches on one occasion and approximately a foot deep another time and they knew that they had covered up evidence of the 38-inch flood with a wall. When the Buyers directly asked about the extent of the flooding, the Sellers said that the water was never over six inches deep. We suppose, without deciding, that a trier of fact could find that such a misrepresentation is not material and could not be relied upon, but we do not see how a court can reach that conclusion as a matter of law.

In *Cato v. Batts*, No. M 2009-02204-COA-R3-CV, 2011 WL 579153 (Tenn. Ct. App. M.S., filed Feb. 17, 2011), a severely demented husband and his aged and distracted wife sold a house after failing to disclose " 'sufficient and complete information' regarding the defective condition of the basement wall" that resulted in flooding in the basement. *Id*. at 4. They did disclose, on the written real estate disclosure form, that "Some Water Comes In Basement Near Front Porch (Hard Rain)." *Id*. at 2. After closing, the buyers experienced flooding in the basement during any significant rain event, along with other problems. *Id*. at 1. They filed an action for negligent and intentional misrepresentation. The trial court

found for the sellers on the intentional misrepresentation claim and for the buyers on the negligent misrepresentation claim. This court affirmed in all respects. Although the *Cato* opinion did not discuss the proof as it related to individual elements of the two theories of recovery, it did conclude that the buyers proved their claim of negligent misrepresentation. *Id*. at 7. We characterized the seller's disclosure that " 'some' water entered into the basement when it rained" as "true" but a "substantial and material understatement[] of the water problems and the leaks in the basement . . ." *Id*. The Sellers attempt in the instant case to distinguish *Cato* in numerous unconvincing ways, the most remarkable of which is the contention that "the nature of the alleged misrepresentation in the present case should not be categorized as 'substantial and material understatement.' " We have already rejected a similar argument with regard to *Shropshire*. We find the purported distinctions to be without merit. The important point we gather from *Shropshire* and *Cato* is that, with regard to a water problem in a basement, an understatement can be a misrepresentation that gives rise to reasonable reliance and resulting damages. The Buyers in the present case are entitled to the opportunity to present that proposition to a trier of fact.

We hold that the trial court erred in granting summary judgment to the Sellers. We do not find it necessary to address the argument that the judgment should be reversed for public policy reasons. Our holding demonstrates that there is a sufficient body of law to protect the public from the kind of misrepresentations alleged. The outcome will, of course, depend on the proof at trial and the determination of the trier of fact.

V.

Before concluding, we are compelled to reiterate our concern that the trial court weighed the evidence concerning the materiality of the misrepresentations and the reasonableness of the Buyers' reliance on those misrepresentations. Without impugning in any way the trial judge's competency or intellectual honesty, we are concerned that, on remand, it would be difficult for him to put aside the conclusions he reached "on the papers" when he is called upon to evaluate live testimony – testimony that may well be substantially the same as that previously before him. We acknowledge that we have raised this concern *sua sponte*, but we have the discretion under Tenn. R. App. P. 13(b) to address issues not raised by the parties in some situations. We are authorized by Tenn. R. App. P. 36(a) to "grant the relief on the law and facts to which the party is entitled or the proceeding otherwise requires and [to] grant any relief, including the . . . making of any order" provided we do not usurp the "province of the trier of fact." An assignment to a new trial judge will not run afoul of this provision. Accordingly, we direct that this matter be assigned to another judge for all proceedings necessary on remand.

VI.

The judgment of the trial court is vacated. Costs on appeal are taxed to the appellees, James E. Huddleston and Patricia M. Huddleston. This matter is remanded, pursuant to applicable law, for further proceedings after assignment to a new judge.


_____
CHARLES D. SUSANO, JR., JUDGE