IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 20, 2014 Session

**FIRST AMERICAN TITLE INSURANCE COMPANY
v. CITIZENS BANK**

**Appeal from the Chancery Court for Sevier County**
**No. 13-6-185      Telford E. Forgety, Jr., Chancellor**

_____

**No. E2014-01105-COA-R3-CV-FILED-FEBRUARY 25, 2015**

_____

First American Title Insurance Company ("First American") sued Citizens Bank seeking a declaratory judgment holding that First American had no liability to Citizens Bank for two specific transactions involving loan closings on real property located in Sevierville, Tennessee. First American filed a motion for summary judgment. After a hearing, the Chancery Court for Sevier County ("the Trial Court") granted First American summary judgment and dismissed Citizens Bank's counterclaim. Citizens Bank appeals to this Court raising issues regarding whether the Trial Court erred in finding that by assigning the mortgages and deeds of trust Citizens Bank also had assigned the two closing protection letters related to these specific transactions, and also that Citizens Bank's counterclaim was barred because Citizens Bank failed to give First American timely notice of the settlement between Citizens Bank and the assignee of the mortgages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Arthur G. Seymour, Jr. and James E. Wagner, Knoxville, Tennessee, for the appellant, Citizens Bank.

M. Edward Owens, Jr., Knoxville, Tennessee, for the appellee, First American Title Insurance Company.

## OPINION

### Background

In 2005, in connection with two[1] specific loan closing transactions involving real property located in Sevierville, Tennessee, First American[2] issued closing protection letters ("CPLs") to Citizens Bank. In pertinent part, the CPLs, which were addressed to Citizens Bank, provide:

> When title insurance of First American Title Insurance Company (the "Company") is specified for your protection in connection with closings of real estate transactions in which you are to be the lender secured by a mortgage (including any other security instrument) of an interest in land, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by said Issuing Agent (an agent authorized to issue title insurance for the Company) or said Approved Attorney (an attorney upon whose certification of title the Company issues title insurance) and when such loss arises out of:
>
> > 1. Failure of said Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you, or
> >
> > 2. Fraud or dishonesty of said Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closings.

---

[1]For purposes of this appeal there are no important differences between the two transactions at issue, and specifically, the CPLs are, in pertinent part, identical. As such, we need not differentiate between the two transactions and will discuss them in this Opinion collectively.

[2]First American issued title insurance policies with regard to the loans.

Your borrower in connection with a loan secured by a mortgage on a one-to-four family dwelling shall be protected as if this letter were addressed to your borrower.

Conditions and Exclusions

\* \* \*

B.  If the closing is to be conducted by said Issuing Agent or Approved Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been issued prior to such closing, or this Company must be designated in writing (i) in your final closing instructions or (ii) in a communication delivered to you by said Issuing Agent or Approved Attorney, as the company from which title insurance is to be received.  The designation referred to in clause (i) of the proceeding sentence shall be negated in the event said Issuing Agent or Approved Attorney advises you in writing that he has selected a title insurer other than the Company.

C.  When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed.  Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D.  Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by said Issuing Agent or Approved Attorney shall be limited to the protection provided by this letter.  However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E.  Claims shall be made promptly to the Company at its principal office at One First American Way, Santa Ana, California 92701.  When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

The protection herein offered will continue until cancelled by written notice from the Company.

Citizens Bank assigned the loans to SunTrust. In connection with the assignment of the loans, Citizens Bank and SunTrust entered into a Correspondent Loan Purchase Agreement, which provides, in pertinent part:

> This Correspondent Loan Purchase Agreement (together with all exhibits hereto, the "Agreement") is made and entered into effective as of May 6, 2005 (the "Effective Date") by and between SunTrust Mortgage, Inc. ("Purchaser"), a Virginia corporation with its principal office at 901 Semmes Avenue, Richmond, Virginia 23224, and Citizens Bank ("Seller"), a Tennessee corporation with its principal office at 1305 Broad Street, New Tazewell, TN 37825, with reference to the following facts:

> A. Seller desires to sell to Purchaser on a servicing related basis certain residential Mortgage Loans (as defined below) as set forth in the Manual (as defined below), and Purchaser wishes to purchase such Mortgage Loans.

> B. Purchaser and Seller desire to set forth in this Agreement the terms and conditions under which Mortgage Loans will be sold by Seller to Purchaser.

> In consideration of the mutual promises and covenants contained herein, Purchaser and Seller agree as follows:

> \* \* \*

> 2.34. **"Mortgage Loan"** means any eligible residential real property secured loan product as set forth in the Manual and meeting all the requirements of this Agreement. The term Mortgage Loan encompasses all of Seller's right, title and interest in and to the Mortgage Loan, including, without limitation, the servicing rights, all Escrows, the Note, the Mortgage, all applicable insurance policies, and all other documentation and information collected by Seller in connection with the Mortgage Loan.

After the loans were assigned to SunTrust, the borrowers defaulted, and SunTrust foreclosed on the respective properties in 2007. The properties eventually were sold to third parties, but SunTrust claimed losses.

In 2012, almost five years after the foreclosures and almost four years after the properties had been sold to third parties, SunTrust sued Citizens Bank in federal district court in Virginia seeking reimbursement for its alleged losses. Citizens Bank and SunTrust entered into a settlement agreement resolving SunTrust's claim against Citizens Bank with respect

-4-

to the two mortgage loans involved in this suit. Not until March of 2013, after reaching the settlement with SunTrust, did Citizens Bank notify First American of its purported claim against First American under the title insurance policies and the CPLs for losses Citizens Bank suffered in connection with its settlement with SunTrust.

First American filed the instant suit in June of 2013 seeking a declaration that it had no liability to Citizens Bank with regard to these two specific transactions. Citizens Bank counterclaimed alleging, in pertinent part:

That the [alleged] losses on [the loans at issue] were due to misrepresentations, negligence, dishonesty and/or fraud by [First American's agent] and/or its owners, employers or agents. [First American's agent] engaged in a fraudulent scheme wherein borrowers were induced to obtain mortgage loans in their names based on promises that they would not have to make a down payment or mortgage payments for the property, would receive cash at closing, and would share in the profit following a resale of the property. As part of the conspiracy, materially false representations were made to Citizens Bank, which, among other things, included false representations related to the straw borrowers' source of funds for down payments and amounts recorded as "cash from borrower" on HUD-1 Settlement Statements and loan applications, for the purpose of inducing Citizens Bank to disburse the mortgage loan proceeds it had wired to and entrusted with [First American's agent].

First American filed a motion for summary judgment. After a hearing, the Trial Court entered its order on May 20, 2014 granting First American summary judgment and dismissing Citizens Bank's counterclaim after finding and holding, *inter alia*, that the CPLs could not be separated from the respective mortgage title insurance policies and, therefore, the CPLs were assigned by Citizens Bank to SunTrust when Citizens Bank assigned the mortgages, and further that Citizens Bank had failed to give First American notice of the suit between SunTrust and Citizens Bank until after that suit had been settled, denying First American the opportunity to assert any defense it may have had. Citizens Bank appeals to this Court.

## Discussion

Although not stated exactly as such, Citizens Bank raises two issues on appeal: 1) whether the Trial Court erred in finding and holding that when assigning the mortgages and deeds of trust, Citizens Bank also had assigned the CPLs; and, 2) whether the Trial Court erred in finding and holding that Citizens Bank's counterclaim was barred because Citizens

Bank had failed to give First American prompt notice of SunTrust's claim against Citizens Bank and of the settlement between Citizens Bank and SunTrust.

With regard to summary judgments, this Court explained in *Estate of Boote v. Roberts*:

The trial court's resolution of a motion for summary judgment is a conclusion of law, which we review *de novo* on appeal, according no deference to the trial court's decision. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). Summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *see Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

This action was filed [after July 1, 2011]. Therefore, the trial court was required to apply the summary-judgment standard set forth in Tennessee Code Annotated § 20-16-101.[3] That statute provides:

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

(1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101 (Supp. 2012).[4]

---

[3]Section 20-16-101 is applicable to all cases filed on or after July 1, 2011.

[4]Section 20-16-101 was enacted to abrogate the summary-judgment standard set forth in *Hannan*, which permitted a trial court to grant summary judgment only if the moving party could either (1) affirmatively negate an essential element of the nonmoving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. The statute is
(continued...)

*Estate of Boote v. Roberts*, No. M2012-00865- COA-R3-CV, 2013 Tenn. App. LEXIS 222, at **24-25 (Tenn. Ct. App. March 28, 2013), *no appl. perm. appeal filed* (footnotes in original but renumbered).

We first consider whether the Trial Court erred in finding and holding that when assigning the mortgages and deeds of trust, Citizens Bank also had assigned the CPLs. With regard to this issue, the Trial Court found and held that the CPLs could not be separated from the respective mortgage title insurance policies and, therefore, the CPLs were assigned to SunTrust when Citizens Bank assigned the mortgages.

We disagree with the Trial Court that the CPLs could not be separated from the respective mortgage title insurance policies. The CPLs were contracts separate and apart from the title insurance policies. As such, the CPLs could be assigned when the mortgages were assigned, but also could have been retained and not assigned when the mortgages were assigned. Citizens Bank was free to assign the CPLs to SunTrust along with the mortgages, and equally as free to contract that the CPLs were not assigned. Thus, we look to the actual transaction between Citizens Bank and SunTrust to determine if the CPLs were assigned along with the mortgages.

In order to determine whether the CPLs were assigned to SunTrust in connection with the assignment of the mortgages, we need look only to the assignment agreement between Citizens Bank and SunTrust. The Correspondent Loan Purchase Agreement between Citizens Bank and SunTrust clearly provides that the assignment transaction includes not only the note, the mortgage, and all applicable insurance policies, but also "all other documentation and information collected by Seller in connection with the Mortgage Loan." The CPLs, without dispute, were other documents collected by Citizens Bank in connection with the mortgage loans. As such, pursuant to the contract between Citizens Bank and SunTrust, the CPLs were assigned by Citizens Bank to SunTrust when Citizens Bank assigned the mortgages to SunTrust, and the CPLs never were assigned back to Citizens Bank by SunTrust in their settlement or otherwise.

We agree with the Trial Court that there is no genuine disputed issue of material fact with regard to whether the CPLs were assigned by Citizens Bank to SunTrust when Citizens Bank assigned the mortgages to SunTrust, and First American is entitled to judgment as a matter of law on the issue of whether First American was liable to Citizens

---

[4](...continued)
intended "to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard." *Coleman v. S. Tenn. Oil Inc.*, No. M2011-01329-COA-R3-CV, 2012 Tenn. App. LEXIS 453, 2012 WL 2628617, at *5 n.3 (Tenn. Ct. App. July 5, 2012).

Bank under the CPLs. We find no error in the Trial Court's grant of summary judgment to First American.

Our resolution of the first issue raised by Citizens Bank renders moot the second issue raised. We affirm the Trial Court's May 20, 2014 order.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, Citizens Bank, and its surety.

_____
D. MICHAEL SWINEY, JUDGE