Jeffrey S. Bivins, J.,
concurring.
I concur in all respects with the excellent opinion in this case authored by Justice Clark. I write separately solely to address from a somewhat different perspective some of the points raised by the dissent. The dissent claims that Hannan v. Alltel Publishing Co., 270 S.W.3d 1 (Tenn. 2008) simply “refined” the summary judgment standard adopted by this Court dating back to 1993 in Byrd v. Hall, 847 S.W.2d 208 (Tenn. 1993). Based in part upon my first-hand experiences in the trenches as a trial court judge, I beg to differ.
The Hannan opinion was filed on Friday, October 31, 2008. At that point in time, I was serving as a trial court judge in the 21st Judicial District. Prior to Hannan, the great majority of trial court judges interpreted Byrd to be consistent with the federal standard. Thus, upon review of Hannan, it became immediately apparent that, rather than representing a “refinement” of Byrd, Hannan represented a sea change in summary judgment jurisprudence in this State. Indeed, these ramifications manifested themselves merely three days later on my civil motions docket on Monday, Nov. 3, 2008. That docket contained five motions for summary judgment. As a result of Hcmnan, I granted one motion and denied the other four motions. Had I applied the Byrd standard, at least as interpreted by most trial court judges at that time, I would have granted summary judgment in two of the four cases in which I denied the motion. Indeed, the one case in which I did grant summary judgment was a case that was submitted on stipulated facts.
Moreover, to the extent that there was any remaining flicker in the flame of hope that Hannan merely represented a “refinement” of Byrd, this Court extinguished that flicker with the force of an open hydrant in its decisions two years later in the cases of Gossett v. Tractor Supply Co., 320 S.W.3d 777 (Tenn. 2010), and Kinsler v. Berkline, LLC, 320 S.W.3d 796 (Tenn. 2010). As the majority opinion points out, in Gossett and Kinsler, the Court abandoned the long-standing burden-shifting procedure set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) that had been applied at the summary judgment stage in employment discrimination and retaliation cases. The Court specifically held that “the McDonnell Douglas framework is inapplicable at the summary judgment stage because it is incompatible with Tennessee summary judgment jurisprudence.” Gossett, 320 S.W.3d at 785 (emphasis added). Thus, Gossett and Kinsler fully confirmed that Hannan, indeed, constituted a radical *274 departure from prior summary judgment jurisprudence.
The dissent also contends that Hannan is not unworkable because we “have produced [no] data whatsoever indicating-a significant decrease in the percentage of summary judgments granted after' Han-nan." Of course there is no such data because that information is not collected at the trial court level. Additionally, any attempt to eompile such data from a review of appellate decisions is not helpful. Appeals from denials of motions for summary judgment are extremely rare and can only be accomplished by interlocutory appeals under Rule 9 or Rule 10 of the Tennessee Rules of Appellate Procedure. Thus, any such data'derived from appellate-court opinions is meaningless in measuring the impact of Hannan.
Finally, I must state that the dissent’s separation of powers argument is rather baffling, at best. If those of us joining in the majority opinion in this case intended to “surrender[ ] the constitutional authority of this Supreme Court,” would not it have been much easier to avoid this case and simply affirm the constitutionality of Tennessee Code Annotated section 20-16-101 in an ultimate constitutional challenge to that statutory provision? Instead, to the contrary, we have chosen to stake out our constitutional duty to interpret - our rules irrespective of the legislature’s action. Indeed, rather than the federal standard adopted today “appearing] to be entirely consistent with section 20-16-101” as stated by the dissent, we may yet face a challenge to this eonstitutionally-suspect statute because of the specific language of that provision to determine if the two approaches are consistent.
Sharon G. Lee, C.J.,
concurring.
I was not serving on the Supreme Court in 2008 when Hannan v. Alltel Publishing Co., 270 S.W.3d 1 (Tenn. 2008) was argued. Had I participated in the Hannan decision, I would have joined in the majority opinion. However, after observing the application of the unique Hannan standard over the -past seven years, I conclude that the Hannan standard is unworkable and should be replaced. Although it is often easier to maintain the status quo rather than admit that a mistake was made, we do not have this option. We must change course when we realize we ax-e headed in the wrong direction.
The dissent recognizes that Hannan “did not clearly articulate with precision just how the second prong was intended to work in practice” and suggests that it be clarified. This is an implicit acknowledgement that the Hannan standai-d is unworkable. As a proposed “clarification” of Hannan, the dissent suggests that trial courts should rely more extensively on scheduling orders. The dissent does not explain how a grant of summary judgment based on the passage of a discovery cutoff date would square with a cox-e holding in Hannan—that it is “not enough for the moving party to challenge the nonmoving party to ‘put up or shut up’ or even to cast doubt on a party’s ability to prove an element at trial and that it will not suffice for the moving party to simply show that the nonmoving party ‘lacks evidence to prove an essential element of its claim.’ ” Hannan, 270 S.W.3d at 8. The problem is, under Hannan, absent an affirmative defense such as a statute of limitations, the moving party may not obtain summary judgment before trial, even if the nonmov-ing party has no evidence whatsoever to support the claims in the complaint. This problem cannot be “clarified” away. The only fix is to scrap it and replace it with a workable standard. ,
The dissent suggests that we should keep the Hannan standard so that we can, *275 in a future case, “confront head-on the separation of -powers issue” presented by the enactment of Tennessee Code Annotated section 20-16-101. I am unwilling to saddle litigants with a summary judgment standard that is unworkable simply to set the stage for a showdown with the Legislature over, its authority to enact a summary judgment standard. . The dissent references this as a “game of chicken”, between the General Assembly and the Tennessee Supreme Court. I call it fulfilling my oath of office and maintaining the independence and integrity of the judiciary.