IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 25, 2011 Session

## DESHON EWAN AND PATRICK EWAN
v.
## THE HARDISON LAW FIRM AND JONATHAN MARTIN

An Appeal from the Chancery Court for Shelby County
No. CH-09-0604-3      Walter L. Evans, Chancellor

_____

No. W2011-00763-COA-R3-CV - Filed April 16, 2012

_____

This is an action for rescission of a release and settlement agreement based on fraud. The plaintiff was involved in a vehicular accident with a commercial driver. She and her husband filed a personal injury lawsuit against the driver and his employer. The parties settled the case for the limits of the defendants' automobile liability insurance policy. The plaintiffs signed a release that included not only the defendants, but also the defendants' attorneys and the insurance company. The plaintiffs later discovered that the defendants had a substantial general liability insurance policy. The plaintiffs then filed this lawsuit against the defendants' attorneys, seeking to rescind the release based on the attorneys' fraud, and a declaratory judgment that the general liability policy covered the plaintiffs' injuries. In addition, the plaintiffs sought compensatory damages from the attorneys for all damages resulting from the fraud and for punitive damages. The attorney defendants filed a motion for summary judgment. Based on the language in the release, the trial court refused to consider extrinsic evidence of fraud and granted summary judgment in favor of the attorney defendants. The plaintiffs now appeal. We hold that the trial court erred in refusing to consider extrinsic evidence of fraud and reverse the grant of summary judgment in favor of the attorney defendants.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Robert M. Fargarson, Daniel F. Peel, Ted S. Angelakis, and Daniel A. Seward, Memphis, Tennessee, for the Plaintiffs/Appellants Deshon Ewan and Patrick Ewan

Richard Glassman, Edwin E. Wallis, III, and Jonathan Stokes, Memphis, Tennessee, for the Defendants/Appellees The Hardison Law Firm and Jonathan Martin

## OPINION

### FACTS AND PROCEEDINGS BELOW

On March 25, 2005, Plaintiff/Appellant DeShon Ewan ("Mrs. Ewan") was involved in a multi-car vehicular accident caused by the negligence of Jason Whitby ("Mr. Whitby"), who was driving a Mack MR6 truck in the course of his employment with John Mosley ("Mr. Mosley"), d/b/a M & W Trees. Mrs. Ewan suffered severe, life-threatening personal injuries in the accident.

The employer, Mr. Mosley, had an automobile liability insurance policy with The Hartford Insurance Company ("Hartford Insurance") that provided up to $500,000 in insurance coverage.[1] Mrs. Ewan and her husband, Patrick Ewan (individually "Mr. Ewan," collectively "the Ewans"), sought compensation under this insurance policy seeking compensation for their injuries. Mrs. Ewan alleged that, as a result of Mr. Whitby's negligence, she incurred medical bills and suffered lost wages, permanent disability or impairment, pain and suffering, loss of enjoyment of life, and disfigurement. Mr. Ewan sought compensation for loss of consortium.

Defendant/Appellee The Hardison Law Firm (the "Law Firm") was retained by Hartford Insurance to handle the Ewans' claim. Defendant/Appellee Jonathan Martin ("Attorney Martin"), a partner in the Law Firm, was one of the attorneys who represented Hartford Insurance in the matter.

In March 2006, the Ewans filed a personal injury lawsuit in Shelby County Circuit Court against Mr. Whitby, Mr. Mosley, and M & W Trees (the "Defendants"). In the complaint, the Ewans sought $7 million in compensatory damages and $7 million in punitive damages for Mrs. Ewan, and $500,000 in damages for Mr. Ewan for loss of consortium.

A few months later, on June 6, 2006, counsel for the Ewans and for two other plaintiffs involved in the accident met with members of the Law Firm, including Jonathan Martin,

---

[1] Mr. Whitby did not have automobile insurance at the time of the accident.

about settling the lawsuits.[2]  Hartford Insurance agreed to pay the policy limits of Mr. Mosley's automobile liability policy, $500,000, and the plaintiffs in turn agreed to settle their lawsuits for that amount and to divide the proceeds equitably.

Pursuant to that agreement, on June 9, 2006, the Ewans and the other plaintiffs executed a Release and Settlement Agreement (the "Release"), settling the claims between them and the Defendants.[3]  In the Release, the plaintiffs released the Defendants, Hartford Insurance, and also the Law Firm, "as well as the agents, employees, and partners" of all of the entities being released.  These "Releasees" were released:

> . . . against any and all claims, demands, liabilities, causes of action and attorneys' fees, whatsoever, of any nature, whether accrued or unaccrued, discovered or undiscovered, asserted or unasserted, arising out of any matter or event which has heretofore existed or occurred, at any time prior to, as well as accruing subsequent to, the execution of this Release and Settlement Agreement.

In return for this Release, Hartford Insurance paid the automobile liability policy limits of $500,000 to the Ewans and the two other plaintiffs.  The Ewans received most of these insurance proceeds; Mrs. Ewan received $326,713.15, and Mr. Ewan received $126,823.

After the Release was signed, the Ewans discovered that Mr. Mosley had another insurance policy with Hartford Insurance, a General Liability Policy for his business with policy limits of $1 million.  They believed that their injuries may have been covered under this policy as well.  The Ewans contended that the Defendants and their attorneys misrepresented to them that there were no other insurance policies covering their injuries, that they relied on those misrepresentations in signing the Release, and that they never would have entered into the settlement agreement had they known of the existence of the General Liability Policy.

As a result, on March 20, 2009, the Ewans filed this action against the Law Firm and Attorney Martin ("the Hardison Defendants"), seeking a declaratory judgment and to set aside the Release pursuant to Tennessee Code Annotated § 29-34-102.[4]  They alleged that

---

[2]Terry Gilliam and Paul Duventree had filed separate cases in the circuit court for injuries arising out of the same accident.

[3]The copy of the Release in the record is signed only by the Ewans, but it is undisputed that the other plaintiffs agreed to these terms as well.

[4]That statute provides:

(continued...)

the Defendants made material misrepresentations  that the Defendants "were only insured and/or covered by one policy of insurance that would not cover all of the damages of the Plaintiffs," and that they executed the Release in reasonable reliance on that misrepresentation.  They asked the trial court to rescind the Release based on mutual mistake of material fact, and to issue a declaratory judgment that the General Liability Policy owned by Mr. Mosley covered their injuries.

On May 8, 2009, the Hardison Defendants filed a motion for summary judgment.[5]  They alleged that they were entitled to summary judgment because, among other things, the Ewans had filed an identical lawsuit against Hartford Insurance and the Defendants in the underlying personal injury lawsuit, and because the Hardison Defendants were not parties to the settlement or the Release.[6]

On May 21, 2009, the Ewans amended their complaint against the Hardison Defendants to add claims for fraudulent inducement.  They asked the trial court to rescind the Release on this basis, and for $5 million in compensatory damages resulting from the Hardison Defendants' fraud.  Attached to the amended complaint were three letters that had been written by Attorney Martin, before the Release was signed, to counsel for all of the plaintiffs involved in the personal injury lawsuits.  In the first, dated August 16, 2005, Attorney Martin stated:

> . . . I have been retained to represent Jason Whitby, as well as John Mosley in this cause.  I also have the limited scope of representing The Hartford Insurance Company, only to the extent that this case can be settled at or below the available policy limits in this cause.

---

[4](...continued)
> Where a compromise settlement of a claim for damages resulting from personal injuries has been brought about by fraud or mistake, such settlement may be rescinded without return of the consideration to the party released, but such consideration paid shall constitute a credit to apply in satisfaction of any judgment procured on account of such personal injuries.

Tenn. Code Ann. § 29-34-102 (2000).

[5]In the early stages of the proceedings, the Hardison Defendants were represented by Jerry O. Potter, a partner with the Law Firm.  Later, On July 1, 2009, current counsel for the Hardison Defendants filed a Notice of Special Appearance and began to represent the Hardison Defendants in this matter.

[6]The separate lawsuit, filed on April 4, 2008, in Chancery Court asserted claims against Mr. Whitby, Mr. Mosley, M & W Trees, and Hartford Insurance for declaratory judgment, fraud, and rescission.  It is unclear why the Ewans did not include the Appellee Hardison Defendants in that action.

The situation we currently face is that the single limit insurance policy Mr. Mosley's company had in place to cover this accident has policy limits of $500,000, including both property damage and personal injuries. My initial assessment of this accident reveals that it is likely that the reasonable settlement values of all of your cases could exceed the $500,000 figure.

. . . [C]onsidering that The Hartford would likely be willing to exhaust their $500,000 policy limits in this case, I would suggest that we may be able to go ahead and attempt to settle these claims.

In the second, dated October 17, 2005, Attorney Martin indicated that he "plan[s] on sending you all documentation supporting my contention that my clients are without personal assets or other insurance." In a third letter dated March 2, 2006, Attorney Martin enclosed "the automobile summary sheet from my client Hartford's insurance policy listing the policy limits that we are dealing with here [$500,000]." The Ewans also attached a fourth letter written by another attorney at the Law Firm, Joshua Spickler, which stated: "It is apparent that the insurance policy covering John Mosley was exhausted . . . . Quite simply, we have very little additional information, there is no other source for recovery, and I see no reason to enter into a protracted discovery process that is not likely to result in any valuable information for your client."

The Ewans asserted in the amended complaint that these misrepresentations, as well as oral misrepresentations allegedly made by the Hardison Defendants at the June 6, 2006 settlement conference, induced them into signing the Release and agreeing to settle their claims against the Defendants for less than the claims were worth. The Ewans' amended complaint also included a claim for punitive damages in the amount of $10 million.

On October 30, 2009, the Hardison Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure or, in the alternative, a motion for summary judgment. In the motion, the Hardison Defendants first argued that the Ewans' request for declaratory judgment regarding the applicability of the Defendants' General Liability Policy must be dismissed for lack of a justiciable controversy, and because the same issues were presented in other prior pending lawsuits.[7] They contended that "by filing here, there, and everywhere, the Plaintiffs have

_____

[7]In addition to the parallel chancery court suit against the personal injury defendants and Hartford Insurance, on June 3, 2009, the Ewans had filed an action in circuit court for rescission and damages for fraud against the defendants in the underlying personal injury action, Hartford Insurance, Joshua Spickler, and also Appellees. The Appellees and Joshua Spickler were later voluntarily dismissed from that lawsuit.
(continued...)

prevented themselves from maintaining any declaratory judgment action as it pertains to these issues."

Second, the Hardison Defendants argued in the motion that the plain language in the Release bars the Ewans' lawsuit, because it releases the Hardison Defendants from a broad spectrum of "any and all claims" that could have been brought against them. In addition, the Hardison Defendants relied on an integration clause in the Release, stating that all agreements and understandings between the parties were embodied in the Release, which "was executed of [the Ewans'] own free act and deed *without reliance on any statement or representation made by Releasees except as herein set forth*." (Emphasis added). They also relied on another clause in the Release that stated:

> Releasors warrant and represent that they have read this Release and Settlement Agreement and have been fully informed and have full knowledge of the terms, conditions and effects of this Release and Settlement Agreement, and they have, either personally or through their attorney or attorneys, fully investigated to their full satisfaction the facts surrounding the various claims, controversies and disputes, and understand and are fully satisfied with the terms and effects of this Release and Settlement Agreement which are contractual and not mere recitals; that it is understood that all agreements and understandings between Releasors and Releasees hereto are embodied and expressed herein; they agree that no promise or inducement has been offered or made except as herein set forth . . . .

Thus, the Hardison Defendants argued that the plain language of the Release barred the Ewans from bringing this lawsuit, because the Ewans released them from *any* claims arising either prior or subsequent to the execution of the Release, and because the Ewans acknowledged that they did not rely on any representations made outside of the four corners of the Release. On this basis, the Hardison Defendants argued that they were entitled to dismissal of the lawsuit or a grant of summary judgment in their favor.

In response, the Ewans argued that (1) there is a justiciable controversy under the Declaratory Judgment Act, (2) the Hardison Defendants are proper parties to the lawsuit, (3) the other pending lawsuits did not involve the same parties or identical issues, and (4) the Ewans' claims against the Hardison Defendants are not barred by the fraudulently obtained Release. They pointed out that, in a parallel proceeding in circuit court, the circuit court judge had

---

[7](...continued)
Apparently, this circuit court action was later consolidated with the underlying personal injury lawsuit filed in circuit court.

-6-

determined that a question of fact existed as to whether the General Liability Policy covered the accident.[8] In addition, they argued that the language in the Release did not bar the lawsuit, because Section 29-34-102 provides that a release may be rescinded if it is brought about by fraud. They also noted that a party induced by fraud to enter into a contract may elect to treat the contract as existing and sue for damages under a tort theory. For these reasons, they asked the trial court to deny the Hardison Defendants' motion to dismiss or for summary judgment.

On December 16, 2010, the trial court conducted a hearing on the Hardison Defendants' motion for summary judgment. In the hearing, the trial court focused on the language in the Release. It noted that the Release did not contain language indicating that the Defendants owned only one insurance policy that covered the automobile accident,[9] nor did it refer to the written communications exchanged by the parties before the Release was signed. The trial court observed that "this release seems to embody the total agreement of the parties. And unless there is some reference in the release itself that adopts or incorporates into the release the previous written communication between the parties, I don't know if we can even rely on those [letters] . . . ."

At the conclusion of the hearing, the trial court issued an oral ruling granting summary judgment in favor of the Hardison Defendants based on the language in the Release. The trial court held that the "strong language" releasing the Hardison Defendants from "any and all claims" included the claims made by the Ewans in this case. The trial court reasoned:

---

[8]Actually, between the filing of the Hardison Defendants' summary judgment motion and the filing of the Ewans' response, the instant lawsuit was stayed to give the other courts an opportunity to address the same issues that were presented in this action. Therefore, by the time the Ewans' response to the Hardison Defendants' summary judgment motions was filed, some of the issues had either been decided or were rendered moot by the decisions in the parallel proceedings.

[9]The provision of the Release most closely resembling such a representation was found in Paragraph 13, which states:

> This cause of action was settled under a Hartford Insurance Company single limits policy with a policy limit of FIVE HUNDRED THOUSAND DOLLARS ($500,000). That policy has been completely and entirely exhausted in the settlement of the claims mentioned in this release, as well as to an additional property damage amount previously paid out under this policy.

Counsel for the Ewans agreed that this is a true statement, but argued that it was "incomplete" or a "half truth" in light of the Hardison Defendants' written misrepresentations.

[T]he Court is of the opinion that the . . . release and settlement agreement represents the total agreement and understanding between the parties based on the language of the agreement itself which makes it very clear that this release — that it is understood that all agreements and understandings between the parties are embodied and expressed herein. And unless additional coverage is expressed herein or the letters which represent the communications involving such additional coverage is referenced herein, parole [sic] evidence would prohibit or prevent the introduction of any such evidence to show that there was an agreement other than what is provided for in this settlement agreement.

...

All right. Now, I'm looking at paragraph one of the release here, and there is some pretty strong language regarding the release that says the releasees against any and all claims, demands, liabilities, cause of action, and attorney's fees whatsoever of any nature whether approved or unapproved, discovered or undiscovered, asserted or unasserted. So that asserted could include what was in those letters. Asserted or unasserted arising out of any matter or event which has heretofore existed or occurred at any time prior to as well as accruing subsequent to the execution of this Release and Settlement Agreement.

Based upon that strong language of the release and the motion filed by the defendants, Hardison Law Firm, for summary judgment, the Court will grant the motion for summary judgment as to the Hardison [Defendants].

On March 2, 2011, the trial court entered a written order granting the Hardison Defendants' motion for summary judgment and incorporating by reference its oral ruling. From this order, the Ewans now appeal.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Ewans argue that the trial court erred in granting summary judgment to the Hardison Defendants based on the language of the Release. They also argue that the trial court erred in finding that they were precluded under the parol evidence rule from offering extrinsic evidence of fraudulent misrepresentation in the inducement of the Release as a basis for rescision of the Release.

We review a trial court's grant of summary judgment *de novo* on the record, affording no presumption of correctness to the trial court's decision. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). "[O]ur task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met." *Id.*

Rule 56.04 provides that summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Hannan v. Alltel Pub'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). The moving party has the ultimate burden of establishing that "there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Byrd*, 847 S.W.2d at 215. The Supreme Court has explained the burden placed on the moving party to support a motion for summary judgment:

> If the moving party makes a properly supported motion, the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists. *Id.* To meet its burden of production and shift the burden to the nonmoving party, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or establish an affirmative defense. *Id.* at 215 n.5. If the moving party does not satisfy its initial burden of production, the court should dismiss the motion for summary judgment. *See id.* at 215. Summary judgment should be granted only when, with the facts viewed in favor of the nonmoving party, it is clear that no genuine issue of material fact exists. *Id.* at 210-11.

*Hannan*, 270 S.W.3d at 5; *see Martin*, 271 S.W.3d at 84.

If the moving party makes a properly supported motion for summary judgment, the nonmoving party is then required to produce evidence of specific facts establishing that genuine issues of material fact exist. *Martin*, 271 S.W.3d at 84 (citing *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd*, 847 S.W.2d at 215). "The nonmoving party may satisfy its burden of production by: (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Id.* (quoting *McCarley*, 960 S.W.2d at 588). "The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party."[10] *Id.*

---

[10]In Chapter 498, Public Acts of 2011, the Tennessee General Assembly amended Title 20 of the Tennessee Code to add, as a new chapter, Tennessee Code Annotated § 20-16-101, concerning the standard for summary

(continued...)

ANALYSIS

The trial court below granted summary judgment in favor of the Hardison Defendants based on the language within the four corners of the Release. In doing so, it declined to consider the evidence that the Ewans contend shows that the Release was fraudulently induced, specifically, the letters written by Attorneys Martin and Spickler indicating that the automobile liability insurance policy was the only insurance policy owned by the Defendants that could cover the Ewans' claims.[11] The trial court's holding was based primarily on the integration clause in the Release, which stated that "all agreements and understandings between [the parties] are embodied and expressed herein." Based on this provision, the trial court concluded that "parol[] evidence would prohibit or prevent the introduction of any [extrinsic] evidence to show that there was an agreement other than what is provided for in this settlement agreement."

Under the parol evidence rule, extrinsic evidence "is inadmissible to contradict, vary, or alter a written contract where the written instrument is valid, complete, and unambiguous, absent fraud or mistake or any claim or allegation thereof." *Airline Constr., Inc. v. Barr*, 807 S.W.2d 247, 259 (Tenn. Ct. App. 1990). However, "Tennessee law has long recognized several exceptions to the parol evidence rule including allegations of fraud, and the rule *does not apply* to claims of fraudulent misrepresentation in inducement of a contract." *Biancheri v Johnson*, Nos. M2008-00599-COA-R3-CV & M2007-02861-COA-R3-CV, 2009 WL 723540, at *9 n.9 (Tenn. Ct. App. Mar. 18, 2009) (emphasis in original; citations omitted); *see also Bennett v. City of Memphis*, No. W2011-00577-COA-R3-CV, 2011 WL 6710447, at *3 (Tenn. Ct. App. Dec. 21, 2011); *Butler v. Butler*, No. W2007-01257-COA-R3-CV, 2008 WL 5396019, at *6 (Tenn. Ct. App. Dec. 23, 2008); *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 588 (Tenn. Ct. App. 1980).

The Hardison Defendants acknowledge that the parol evidence rule does not apply to claims of fraudulent misrepresentation in the inducement of a contract, but they maintain that the trial court was correct because of the integration clause in the Release. The Hardison Defendants claim that, in light of the integration clause, "to allege fraudulent inducement these Plaintiffs must identify the misrepresentations within the Release relied upon in its

---

[10](...continued)
judgment. The statute applies to actions filed on or after July 1, 2011. Because this lawsuit was filed in October 2010, we review the trial court's decision under *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008).

[11]The Ewans also alluded to oral communications made by the Hardison Defendants indicating that the automobile insurance policy was the only one in existence that covered their injuries. No evidence of any such communications was presented to the trial court for consideration for the summary judgment motion.

execution. In other words, the 'fraud' must be contained within the four corners of the Release."

We must respectfully disagree. This Court has held that parol evidence is admissible to prove fraud in the inducement of a contract, despite contractual language similar to that in the integration clause in this case. In **_Butler v. Butler_**, a divorce case, the parties were at odds over the division of marital property. In an effort to settle the issues amicably, they entered into a Marital Dissolution Agreement ("MDA"). After executing the MDA, the husband went to retrieve personal property to which he was entitled, and found that much of it was damaged or destroyed. The husband then sought to set aside the MDA, claiming that he was fraudulently induced into signing it by oral representations made by the wife and her attorney.[12] **_Butler_**, 2008 WL 5396019, at *1.

To establish his claim of fraudulent inducement, the husband in **_Butler_** sought to introduce evidence of oral representations made to him by the wife's attorney at the settlement conference. According to the husband, the wife's attorney stated that, if the husband would sign the MDA, the attorney "would not permit [the wife] to cause any damage whatsoever to [his] property." **_Id._** at *5. The wife argued that such extrinsic evidence was inadmissible based on an integration clause in the MDA similar to the clause at issue in the instant case. In **_Butler_**, the integration clause provided in part:

> This Agreement contains the entire understanding and Agreement between the parties. There are no representations, warranties, covenants or undertakings other than those expressly set forth herein . . . . Each party acknowledges that no representations of any kind have been made to him or her as an inducement to enter into this Agreement, other than the representations set forth herein.

**_Id._** at *6 n.1. The wife contended that evidence of the attorney's alleged misrepresentation was contrary to this written clause and was, therefore, inadmissible under the parol evidence rule. The appellate court rejected this argument, concluding that the parol evidence rule does not apply to claims of fraudulent misrepresentation in the inducement of a contract. The court explained:

> A claim for fraudulent misrepresentation in inducement seeks to _rescind the_ _contract_ on the grounds that one party fraudulently induced the other to enter the contract; such claims are based in tort, and the parol evidence rule does not

---

[12]In **_Butler_**, the husband's efforts to have the MDA set aside were raised in response to the wife's motion to enforce the MDA. **_See Butler_**, 2008 WL 5396019, at *1.

bar parol evidence to prove the alleged fraud even where the evidence contradicts the written contract.

*Id.* at *6 (emphasis in original). Thus, in **Butler**, the Court recognized that the parol evidence rule does not apply to a claim of fraudulent misrepresentation in the inducement of a contract, despite contractual language to the effect that no such extra-contractual representations were made.

To demonstrate fraudulent misrepresentation in the inducement of a contract, a party must show: (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from reliance. *Id.* at *7 (citing **Lowe v. Gulf Coast Dev. Inc.**, No. 01A01-9010-CH-00374, 1991 WL 220576 (Tenn. Ct. App. Nov. 1, 1991)). In this case, the trial court declined to consider the Ewans' extrinsic evidence offered to establish that a genuine issue of material fact existed as to the elements of fraud in the inducement of the Release, and it granted summary judgment in favor of the Hardison Defendants on this basis. We must respectfully conclude that the trial court's refusal to consider the extrinsic evidence was erroneous.

The trial court's grant of summary judgment was based solely on the language in the Release and its decision not to consider the Ewans' extrinsic evidence; therefore, it did not reach the issue of whether the content of the attorney letters or any other extrinsic evidence sufficiently established the Ewans' claim for fraud or fraud in the inducement. We hold only that the trial court erred in refusing to consider the Ewans' extrinsic evidence and in granting summary judgment in favor of the Hardison Defendants on this basis, and we do not address any other issues raised. Accordingly, we must reverse the grant of summary judgment in favor of the Hardison Defendants and remand for further proceedings.

### CONCLUSION

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are to be taxed to Appellees The Hardison Law Firm and Jonathan Martin, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE