# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
## August 15, 2012 Session

## SARAH WHITE v. TARGET CORPORATION

**An Appeal from the Circuit Court for Shelby County**
**No. CT-002093-05      Karen R. Williams, Judge**

**No. W2010-02372-COA-R3-CV - Filed December 18, 2012**

This appeal involves claims for intentional infliction of emotional distress, invasion of privacy, and misappropriation of image. The plaintiff, a customer of the defendant store, brought clothing into the store's dressing room to try it on. While in a state of undress in the dressing room, the customer noticed in the reflection of her dressing-room mirror a globe on the store ceiling that appeared to contain a surveillance camera. Store employees initially told the customer that the globe contained a camera, but a store manager later told the customer that the ceiling globe did not contain a camera. Eventually, the plaintiff customer filed this lawsuit against the defendant store, seeking damages for, *inter alia,* intentional infliction of emotional distress, invasion of privacy, and misappropriation of image. The trial court granted summary judgment in favor of the defendant store. The plaintiff now appeals. We reverse, finding that the standard for summary judgment under ***Hannan v. Alltel Publishing*** has not been met in this case.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is
### Reversed and Remanded

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Gregory D. Cotton, Collierville, Tennessee, for the Plaintiff/Appellant Sarah White

Betty Ann Milligan, Memphis, Tennessee, for the Defendant/Appellee Target Corporation

# OPINION

## Facts

At approximately 10:00 a.m. on December 7, 2004, Plaintiff/Appellant Sarah White visited a Target store owned by Defendant/Appellee Target Corporation ("Target"). Mrs. White selected some clothing and went to the women's dressing room to try on the items. Once inside the dressing room, Mrs. White disrobed down to her underclothes in preparation for trying on the clothing. At that point she looked in her dressing-room mirror and noticed in the reflection a smoked-Plexiglas dome on the ceiling of the store. Believing that the ceiling dome must surely contain a store surveillance camera with a clear view of her in a state of undress inside the ladies' dressing room, Mrs. White claims that she became "startled, frightened, and embarrassed." She immediately contacted a store employee and pointed out that the smoked-Plexiglas ceiling dome had a clear view of the dressing room in which she had been changing clothes. The employee confirmed to Mrs. White that there was video monitoring equipment inside the dome and then sought to locate a store manager. Apparently unsuccessful in finding a manager, the employee returned with another store employee, who promptly "confirmed that you could see the camera mounted in the ceiling" and agreed with Mrs. White that "this was a problem." At that point, Mrs. White waited for further assistance from the store personnel, but none was forthcoming. She attempted to telephone her husband, Plaintiff/Appellant Patrick White, for assistance but could not reach him. Finally, feeling "completely embarrassed and humiliated" by her ordeal, Mrs. White left the store.

Later that same day, around 1:30 p.m., Mrs. White attempted to call the Target store manager, Mr. Phil Bentley ("Mr. Bentley"). She was told that he was not at the store but was expected to arrive at around 3:00 p.m. By approximately 4:00 p.m., Mr. Bentley still had not contacted Mrs. White, so Mr. White called him at the store. In the telephone call, Mr. Bentley told Mr. White that he was aware of what had happened, but he assured Mr. White that there was no actual camera in the smoked-Plexiglas ceiling dome. Mr. Bentley also said that the dome had been moved.

Dissatisfied with Mr. Bentley's response in the telephone call, at around 6:15 p.m. that evening, Mr. and Mrs. White went to the Target store to meet with him. The Whites explained to Mr. Bentley what had happened to Mrs. White that day and how they were treated by store personnel. Mr. Bentley reiterated that there was no camera in the smoked-Plexiglas ceiling dome identified by Mrs. White, that it was in effect a "dummy dome," and told Mr. and Mrs. White that the store had only three functional surveillance cameras located elsewhere in the store. He explained to the Whites that the store's security cameras could be moved around as needed to monitor certain high-risk areas. Asked to provide assurance that there was no camera in the smoked-Plexiglas ceiling dome pointed out by Mrs. White, Mr.

-2-

Bentley responded that "he could only give his word that there was none." The Whites asked to look at the video surveillance room and/or the tapes from all of the surveillance cameras for that period of time, but Mr. Bentley denied those requests. According to the Whites, Mr. Bentley did not show them the dome in question, and no one ever inspected the dome in the presence of either Mr. or Mrs. White. Mr. Bentley told the Whites that he would contact someone at a higher level in the corporation to address their concerns.

Subsequently, Mr. John Poole of Target Corporation in Nashville, Tennessee, telephoned the Whites and left messages that he would investigate the matter and contact them after his investigation. Mr. Poole conducted his investigation on December 8, 2004. He later reported to the Whites that his investigation revealed no evidence of a camera in the subject dome, and that in fact there was no wiring leading to the dome. In response, the Whites asked for a letter of apology and assurance that Target had made no photographs or videos of Mrs. White preparing to try on ladies' clothes. They did not receive the requested letter.

**Lawsuit**

On April 15, 2005, Mr. and Mrs. White filed this lawsuit against Target in the Circuit Court for Shelby County, Tennessee. The complaint alleged that Target had wrongfully subjected Mrs. White to video surveillance while in the store's dressing room, and that Target had misappropriated her image. The Whites' claims were based on (1) violation of Tennessee Code Annotated § 39-13-601, *et seq.* (wiretapping), (2) intentional infliction of emotional distress, (3) nonconsensual misappropriation of identity, and (4) assaulting Mrs. White "by misappropriating, taking and absconding with the image of [Mrs. White] without her consent." The Whites alleged that they had suffered damages from Target's actions in the form of emotional distress, described as "[h]umiliation, embarrassment and fright," as well as the "loss of consortium and services of [Mrs. White] by [Mr. White]." The complaint sought $4 million in compensatory damages, $18 million in punitive damages, a $100 statutory penalty, and attorney fees and costs as provided in Section 39-13-603. In its answer, Target denied all of the allegations in the Whites' complaint. Discovery ensued.

On April 28, 2006, Target filed a motion for summary judgment on all of the Whites' claims, accompanied by a statement of undisputed facts. Target first argued that the Whites' claim of intentional infliction of emotional distress must fail because (1) "Target's placement of the globe in question without any camera or recording device inside cannot rise to conduct as intentional or reckless toward" Mrs. White or any other customer, and (2) "Target's placement of a 'dummy globe' does not even begin to rise to the level of conduct so 'outrageous in character and so extreme in degree, as to go beyond all bounds of decency.'" In support of its motion, Target submitted the affidavit of Mr. Bentley, stating that there was no camera in the ceiling globe. Target noted that the Whites had no evidence to rebut Mr.

Bentley's affidavit, so the Whites' claim of intentional infliction of emotional distress was based only on Mrs. White's "vivid imagination." Target also argued that Mrs. White's alleged mental and emotional injury was not sufficient to support a claim of intentional infliction of emotional distress.

Target also argued that it was entitled to summary judgment on the Whites' claim that Target violated Tennessee Code Annotated § 39-13-601, Tennessee's wiretapping statute, because civil penalties are not available under the statute for the actions in which the Whites assert that Target engaged. It also contended that the Whites' claim of "misappropriation of image and/or likeness" pursuant to Section 47-25-1103 is not a recognized cause of action in Tennessee. Target maintained that it was entitled to summary judgment on any claim of invasion of privacy or misappropriation of image or likeness because the Whites have "not been able to produce one piece of testimony, documentation, record, or any other shred of evidence even tending to show that there was a camera of any kind in the 'smoked, Plexiglass globe,' at the Target Store," or "that there was a tape in this alleged camera, that the recorder was on, or that her image was captured." In support of the motion, Target relied on Mr. Bentley's affidavit and the deposition of Mrs. White.

Target's motion for summary judgment languished for almost four years, while discovery puttered along. The record contains no indication of the reason for the delay in resolution of the summary judgment motion.

On January 11, 2010, Target filed a supplemental memorandum in support of its motion for summary judgment, along with the deposition of Mr. Bentley. In the supplemental memorandum, Target argued that Mr. Bentley's deposition testimony "negates certain elements of" Mrs. White's claim of intentional infliction of emotional distress by establishing that Target "did not intend to inflict emotional injury by placing the surveillance domes" and that its placement of the domes "served the legitimate commercial purpose of deterring theft," thus negating the element of intent. Likewise, Target contended, Target's conduct could not qualify as "outrageous" because it "serves a legitimate commercial purpose," so Target insisted that it had negated that element of the Whites' claim as well. As to the Whites' claim of misappropriation of Mrs. White's image, Target reiterated that the Whites had "entirely failed to come forward with any proof that [Target] actually recorded an image of her while she was in the dressing room," and it pointed to Mr. Bentley's deposition as "confirm[ing] the central reality of this case: there simply was no camera in the women's dressing room while [Mrs. White] was changing clothes, and no images were taken of her."

On January 14, 2010, the Whites filed a motion to amend their complaint to "include a common law right of action consistent with the allegations already alleged against the Defendants." The Whites also relied upon the deposition of Mr. Bentley in support of their

motion to amend. Soon thereafter, the trial court entered a scheduling order setting a discovery deadline and setting the trial date for October 11, 2010.

On August 25, 2010, the Plaintiffs filed a response to Target's motion for summary judgment, attaching the affidavit of Mrs. White. Target filed a reply to the Whites' response soon thereafter.

On September 21, 2010, before the scheduled trial date, the trial court entered an order granting summary judgment to Target on all of the Whites' claims. The trial court's order did not address each claim individually, but instead it made an overall ruling based on "statements of counsel [for all parties], affidavits of Phillip Bentley and Plaintiff, Sara White, legal memorand[a] in support and opposition of [Target's] Motion and the entire record in this cause." The trial court held:

> [T]here is no genuine issue as to any material fact in this cause . . . . [F]urther, the Defendant has effectively shifted the burden of proof in regard to the Motion for Summary Judgment of the Defendant, and this Court further finds that the Plaintiffs will be unable to prove at trial the essential elements of the causes of action that they have set forth in their Complaint.

On this basis, the trial court granted summary judgment in favor of Target.[1] Mrs. White now appeals the trial court's order; Mr. White did not appeal.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Mrs. White raises two issues, essentially arguing that the trial court erred in granting summary judgment in favor of Target on her claims:

> 1. Whether the trial court erred as a matter of law in concluding that there was not a material issue of disputed fact sufficient to deny Target's motion for summary judgment as to the intentional infliction of emotional distress due to lack of necessary outrageous conduct?
>
> 2. Whether the trial court erred as a matter of law in concluding that there was not a material issue of disputed fact sufficient to deny Target's motion for summary judgment as to the misappropriation by Target of Mrs. White's

---

[1]On April 19, 2012, in order to ensure that all matters had been resolved, the trial court entered an order "summarily denying all motions and claims not heretofore ruled on."

image, which constituted an invasion of her privacy and violations of Tennessee Code Annotated §§ 39-13-601 and 47-25-1103?

The trial court's resolution of a motion for summary judgment is a conclusion of law, which we review *de novo* on appeal, according no deference to the trial court's decision. *Martin v. Norfolk So. Rwy. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). Summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *see Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

Our review of the trial court's grant of summary judgment in this case is governed by the standard set forth in *Hannan v. Alltel Publ'g Co.*[2] The Tennessee Supreme Court recently expounded on the *Hannan* standard:

> In *Hannan*, this Court reaffirmed the basic principles guiding Tennessee courts in determining whether a motion for summary judgment should be granted, stating:
>
>> The moving party has the ultimate burden of persuading the court that "there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Byrd*, 847 S.W.2d at 215. If the moving party makes a properly supported motion, the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists. *Id.* . . .
>>
>> . . . [I]n Tennessee, a moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial.
>
> *Hannan*, 270 S.W.3d at 5, 8-9. It is insufficient for the moving party to "merely point to omissions in the nonmoving party's proof and allege that the

---

[2]The Tennessee General Assembly has enacted legislation changing the summary judgment standard from that which is set forth in *Hannan*, but the new statute applies only to cases filed on or after July 1, 2011, and thus is not applicable to this appeal. *See* Tenn. Code Ann. § 20-16-101 (Supp. 2012).

-6-

nonmoving party cannot prove the element at trial." *Id.* at 10. "Similarly, the presentation of evidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). If the party moving for summary judgment fails to satisfy its initial burden of production, the burden does not shift to the nonmovant and the court must dismiss the motion for summary judgment. *Hannan*, 270 S.W.3d at 5; *Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998).

*Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25-26 (Tenn. 2011). Thus, under *Hannan*, Target is entitled to summary judgment on all of the Plaintiffs' claims only if it affirmatively negates an element of each of the claims or establishes that she cannot prove an essential element of her claims at trial. If it does so, the burden then shifts to Mrs. White to establish that a genuine issue of material fact exists for trial. If it does not, then the motion for summary judgment must be denied. *Id.*

## ANALYSIS

At the outset of our analysis, we note that Target's motion for summary judgment was filed in 2006, prior to the Tennessee Supreme Court's decision in *Hannan v. Alltel Publishing*. As such, the position Target takes in its motion reflects the summary judgment standard in effect at that time. In 2008, the Court issued its opinion in *Hannan,* which significantly changed the standard for summary judgment in Tennessee. After *Hannan* was issued, Target filed a supplement to its summary judgment motion, but the supplement did not change any of the arguments in Target's original motion; it merely utilized the deposition testimony of store manager Mr. Bentley in further support of its motion.

### Intentional Infliction of Emotional Distress

Mrs. White first argues that the trial court erred in granting summary judgment on her claim of intentional infliction of emotional distress. The elements of a claim for intentional infliction of emotional distress are (1) the conduct about which the plaintiff complains must be intentional or reckless, (2) the conduct must be so outrageous that it is not tolerated by civilized society, and (3) the conduct about which the plaintiff complains must result in serious mental injury. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

Mrs. White argues that the trial court erred in determining that Target had negated an element of her claim, thereby shifting the burden to her to submit evidence to establish the existence of a genuine issue of material fact. She claims that she will be able to prove at trial that

Target intentionally or recklessly placed the security camera in plain view of the women's dressing room, and that such security camera placement was completely "outrageous" and not tolerable by a civilized society. Mrs. White contends that Target's male security personnel had access to the concealed cameras and to the recordings of female customers in the women's dressing room, and so they could have recorded what appeared on the cameras and possibly distributed those recordings on the internet or otherwise. All of this, she argues, qualifies as "outrageous conduct." Finally, Mrs. White argues that Target did not negate the element of serious mental injury, because she testified credibly in her deposition that she experienced tremendous emotional and physical distress after she realized she was being observed while in Target's dressing room; she could not sleep or eat, and her husband noted a change in her personality and behavior. For these reasons, she argues, the trial court erred in granting summary judgment in favor of Target on her claim for intentional infliction of emotional distress.

In response, Target argues that the record shows that Mrs. White would have been unable to prove at trial any of the elements of this claim. As Target argued in the trial court below, it contends on appeal that Mrs. White "put forth no evidence" to support her assertion that Target intended to cause her emotional distress, because Target established that the ceiling globe in question was a "dummy globe" that did not contain a surveillance camera, and that the subject ceiling globe was one in a long line of dummy globes installed to deter shoplifters. Target claims that its failure to remove the globe sooner was, at most, a negligent act. Target also asserts that Mrs. White "set forth no evidence in response to" Target's motion for summary judgment that would suggest that Target's actions were intentional or reckless. In addition, Target contends that its actions did not rise to the level of "outrageous conduct" under Tennessee law. Target argues that Mrs. White put forth "no proof whatsoever" that there was a camera inside the smoked-Plexiglass ceiling dome. Consequently, Target maintains, its action of merely putting a dummy globe within view of the dressing room does not rise to the level of the "outrageous conduct" required for a claim of intentional infliction of emotional distress. It contends that the element of serious mental injury is not met because Mrs. White's deposition testimony does not establish that she endured serious, extreme, or severe mental injury. Therefore, Target argues, because Mrs. White did not submit sufficient proof to establish the elements of her claim, the trial court properly granted Target summary judgment on Mrs. White's claim of intentional infliction of emotional distress.

As pointed out previously, Target filed its motion for summary judgment in this case well before the Tennessee Supreme Court rendered its decision in *Hannan*. From our review, its argument on the claim of intentional infliction of emotional distress is based entirely on the premise that (1) the testimony by Mr. Bentley, by affidavit and by deposition, establishes that there was no camera inside the offending ceiling globe; and (2) Mrs. White could offer only

speculation that the ceiling globe ever contained a camera and had proffered no evidence to support her belief that there was a camera inside the globe. Thus, the evidence at this point in the proceedings is undisputed that the ceiling globe in question was merely a "dummy globe," goes the argument, so we can conclude that Mrs. White cannot prove at trial that Target engaged in intentional, outrageous conduct, and Target is entitled to summary judgment as a matter of law.

Under the standard for summary judgment that existed in Tennessee at the time Target originally filed its motion for summary judgment, this argument may have carried the day. From our review, the only evidence in the record that the subject ceiling globe ever housed a surveillance camera is the statement by Target store employees flagged down by Mrs. White at the time of the incident, indicating that there was indeed a camera in the globe. However, in the interim between the filing of Target's summary judgment motion and the trial court's decision on the motion, the summary judgment standard changed to the substantially more rigorous standard in *Hannan*. Under *Hannan,* to obtain summary judgment in its favor, Target must *negate* an element of Mrs. White's claim or show that Mrs. White *cannot* establish the elements of her claim. It is not enough to say, as Target does here, that Mrs. White has *not yet* proffered evidence to substantiate her assertion that the offending ceiling globe contained a security camera.[3] Under that circumstance, Target has not "disprove[d] an essential factual claim" made by Mrs. White, and therefore has not shifted the burden to Mrs. White. *Martin*, 271 S.W.3d at 84 (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)).

We note that, in the proceedings below, Target did not argue in the alternative that, assuming *arguendo* that the subject ceiling globe in fact contained a camera, its conduct would not reach the level of intentional, outrageous conduct, so we do not address that argument on appeal. Likewise, Target did not argue in the trial court below that the "reasonable person" component of the mental injury element of the claim of infliction of emotional distress is not met in this case, so we do not address that argument on appeal either. *See Brown v. Mapco Express, Inc.,* No. W2011-01751-COA-R3-CV, 2012 WL 3590379, at *7-8 (Tenn. Ct. App. Aug. 22, 2012).

The trial court's order granting summary judgment in favor of Target does not offer much insight into the trial court's reasoning for its decision. However, from the brief statement in the order that Target had "effectively shifted the burden of proof" to Mrs. White, and that

---

[3]Under *Hannan,* as we perceive the ruling in that case, it is not enough to rely on the nonmoving party's lack of proof even where, as here, the trial court entered a scheduling order and ruled on the summary judgment motion after the deadline for discovery had passed. Under *Hannan,* we are required to assume that the nonmoving party may still, by the time of trial, somehow come up with evidence to support her claim.

Mrs. White "will be unable to prove at trial the essential elements" of her claims, we can only surmise that the trial court adopted the reasoning advocated by Target in its motion for summary judgment, namely, that Mrs. White had proffered no evidence that the subject ceiling globe housed a surveillance camera, and therefore would not be able to prove her case at trial. Respectfully, we must hold that this does not comport with the summary judgment standard we are required to apply, the *Hannan* standard. Therefore, because Target did not carry its burden under *Hannan* to negate an element of Mrs. White's claim, but instead relied on her *lack of* proof, we must reverse the trial court's grant of summary judgment in favor of Target on the claim of intentional infliction of emotional distress.

## Misappropriation of Image

Mrs. White next argues that the trial court erred in granting summary judgment in favor of Target on her claims for invasion of privacy and misappropriation of her image, in violation of Tennessee Code Annotated § 39-13-601 (wiretapping) and § 47-25-1103 (personal rights protection), and for invasion of privacy from the alleged recording. As it did with the claim of intentional infliction of emotional distress, Target argued in the trial court below, and argues in this appeal, that it was entitled to summary judgment on the claims based on invasion of Mrs. White's privacy and misappropriation of her image, because Mrs. White did not submit sufficient evidence that the infamous ceiling dome contained a security camera at the time she was in the Target dressing room. Because there was insufficient evidence that the ceiling dome housed a camera, Target argues, Mrs. White "cannot prove that any photographs or other images were ever taken of her by [Target] for the simple reason that by all known accounts such photographs do not exist."

Again, under *Hannan,* we must hold that Target again misses the mark. Mrs. White testified in her deposition that two Target employees told her that there was a camera inside the dome, and that they indicated to her that "this was a problem." She further testified that the Target employees refused to remove the dome to show her that there was no camera, and they also refused to take her to the security office or to show her the surveillance recordings from the day in question. The evidence upon which Target relies, Mr. Bentley's testimony, does not establish that Mrs. White *cannot* discover evidence showing that a camera was under the dome in question, or that images were made from this camera that were misappropriated. Target can only establish that, in the record before us, Mrs. White *has not yet* found evidence of such a camera. Therefore, Target did not negate an element of Mrs. White's claims.

Again, in its brief order granting summary judgment to Target, the trial court states only that Target had shifted the burden of proof on the motion, and that Mrs. White "will be unable" to prove her claims at trial. We interpret this as an adoption of the reasoning employed by

-10-

Target in its motion for summary judgment, which does not comport with the standard in *Hannan.*

We note that Target also argued that it was entitled to summary judgment because civil penalties are not available for Mrs. White's claim under the wiretapping statute, and because there is no cause of action in Tennessee for "misappropriation of likeness." However, we see no indication in the trial court's order that it addressed these arguments. Because the trial court below apparently did not address these arguments by Target, we also decline to address them on appeal.

Accordingly, on the record before us, we must respectfully conclude that the trial court erred in granting summary judgment in favor of Target on Mrs. White's claims based on invasion of privacy and misappropriation of her image.

## CONCLUSION

The decision of the trial court is reversed and the cause is remanded for further proceedings. Costs on appeal are to be taxed to Appellee Target Corporation, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

-11-